LAZAR, APPELLANT, *v.* THE CLEVELAND ELECTRIC
ILLUMINATING CO., APPELLEE.

(No. 74-515—Decided July 16, 1975.)

132

*Messrs. Gold, Rotatori, Messerman & Hanna, Mr. Harry A. Hanna* and *Mr. Milton Dunn,* for appellant.

*Messrs. Squire, Sanders & Dempsey, Mr. Eben G. Crawford* and *Mr. William J. Kerner,* for appellee.

PAUL W. BROWN, J. The evidence presented in the Court of Common Pleas was clearly sufficient to justify a finding of negligence on the part of CEI. The jury's determination in that regard has not been challenged. What remains at issue is whether the appellant, grievously injured as a result of contact with high tension lines, was contributorily negligent as a matter of law.

Ohio adheres to the common-law doctrine that, absent willful, wanton, or reckless misconduct on the part of a defendant,[1] contributory negligence on the part of a plaintiff is an absolute bar to recovery in a negligence action. " * * * the defense does not rest upon the idea that the defendant is relieved of any duty toward the plaintiff. Rather, although the defendant has violated his duty, has been negligent, and would otherwise be liable, the plaintiff is denied recovery because his own conduct disentitles him to maintain the action. In the eyes of the law both parties are at fault; and the defense is one of the plaintiff's disability rather than the defendant's innocence." Prosser, Law of Torts (4 Ed.), 417, Section 65.

Because a finding of contributory negligence as a matter of law on the part of a plaintiff determines the validity of his claim with such finality, the rule is that conduct of this character requires evidence so clear that reasonable minds could not differ with regard to it.

The appellant, Dennis Lazar, was severely burned while assisting in the repair of a television antenna on the roof of a house. His activity was not unlike that undertaken by many, who, for one reason or another, come into the vicinity of overhead power lines in the ordinary course of events. Only by holding that each of these individuals is precluded from ever contacting electric wires without being negligent can the judgment of the Court of Appeals be affirmed as to CEI.

---

[1]See *Payne* v. *Vance* (1921), 103 Ohio St. 59; *Universal Concrete Pipe Co.* v. *Bassett* (1936), 130 Ohio St. 567; *Kellerman* v. *J. S. Durig Co.* (1964), 176 Ohio St. 320.

2 Restatement of the Law, Torts, 2d, 511, Section 466, defines contributory negligence as a plaintiff's "* * * intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which the plaintiff knows or has reason to know."

Comment *c* to that section provides:

"* * * In order that the plaintiff's conduct may be contributory negligence of the sort described * * * the plaintiff must know of the physical condition created by the defendant's negligence *and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved.*" (Emphasis added.)

A determination that reasonable minds could not differ as to whether an individual who comes in contact with an uninsulated high tension electric wire while working on a residential roof is contributorily negligent requires evidence which clearly shows that the plaintiff was or should have been conscious of the existence of facts from which a reasonably prudent man would have foreseen the presence of such wires, or, having seen them, have recognized their dangerous propensities. Two Ohio cases are persuasive in this regard.

In *Holden* v. *Cincinnati Gas & Electric Co.* (1937), 57 Ohio App. 448, the plaintiff was injured when the pruning shears he was using came in contact with the uninsulated portion of a high tension wire strung through a tree. The defendant urged that plaintiff was contributorily negligent as a matter of law, but the court disagreed.

At trial, the plaintiff was asked:

"Q. Had you observed wires through those trees in Terrace Park? A. We could see the wires through some of them, yes.

"* * *

"Q. Those were electric wires? A. I would suggest they were.

"Q. You say you suggest they were; you mean you knew—you thought they were? A. Yes sir.

"Q. When you saw those wires you realized they were

electric wires? A. I figured that is about what they were.''

In paragraph one of the syllabus, the court held:

''It is for the jury to determine whether a person who possessed no special knowledge of electricity was guilty of contributory negligence in inadvertently touching electric wires with pruning shears while lowering the shears from a tree which he was in for the purpose of trimming, where he was aware of the fact that wires ran through the tree but could not readily see them because of the foliage.''

In *Jacques* v. *Dayton Power & Light Co.* (1947), 80 Ohio App. 258, the plaintiff's decedent was electrocuted when a boom scoop under his direction and control came into contact with the defendant's uninsulated high-voltage wires. The Court of Common Pleas sustained a demurrer to the plaintiff's petition, but the Court of Appeals reversed, stating:

''Whether a person injured by electric current by coming into direct or indirect contact with electric wires suspended over highways or lands is contributorily negligent is a question for the jury.''

At pages 266 and 267, the court observed:

''So, in the instant case, reasonable minds might differ under the facts appearing in the petition whether plaintiff's decedent exercised due care at and immediately prior to the time he was killed. Whether he knew of the presence of the wires, and, if so, should have known that they were highly charged with electricity, whether he should have known that the boom scoop was about to strike the wires, all are questions which must be determined in the light of the obligation of a reasonably prudent man under the circumstances appearing. * * *

''* * *

''We are cited to numerous cases to the effect that one who has knowledge of a dangerous situation may not disregard it and, if he does so, is chargeable with contributory negligence. Of course, this is a sound principle, but the cases cited all will permit of the differentiation between a condition which, in the exercise of ordinary care, may or

may not have been known to be dangerous.'"[2]

Decisions of courts in other jurisdictions are also instructive.

In *Stilfield* v. *Iowa-Illinois Gas & Electric Co.* (1960), 25 Ill. App. 2d 478, 167 N. E. 2d 295, the plaintiff was injured when electricity arced from a power line through a cable and chain, and into his body. The court reversed the trial court's holding that the plaintiff was contributorily negligent as a matter of law, stating at page 487:

" * * * It is true that the plaintiff was aware of the location of the electric line and the fact that it transmitted electrical current and was of its nature dangerous. However, the record plainly indicates that plaintiff had no knowledge of the voltage being carried or that the wire was uninsulated. *Plaintiff appears to have had, as so many persons have, only the nebulous notion that electric wires are generally dangerous and direct contact with them is to be avoided.* Furthermore, so far as the record indicates, the plaintiff took pains to keep the crane, boom, and cable at least 3 or 4 feet from the electrical wire. Under these circumstances, we cannot agree with the trial court that all

---

[2]Appellee cites *Hetrick* v. *Marion-Reserve Power Co.* (1943), 141 Ohio State 347, to support its assertion as to the standard of care required of appellant. In *Hetrick*, plaintiff's decedent was electrocuted when, while grading a road in Roundhead Township, he made contact with an electric line. This court determined, not that the decedent was contributorily negligent as a matter of law, but rather that the defendant power company was not negligent as a matter of law.

Appellee relies upon the court's statement, at page 356 in *Hetrick*, that "the presence of * * * suspended wires, in and of themselves, is a warning to the adult public of potential danger." That language does not express a controlling principle of law. As was noted in *Jacques* v. *Dayton Power & Light Co., supra* (80 Ohio App. 258), at 265:

"That statement [in *Hetrick*] was not carried into any proposition of the syllabus, was not necessary to the judgment, and did not require the conclusion that mere failure to refrain from coming in contact with wires strung along poles is contributory negligence as a matter of law. * * *

"The rule is that generally the contributory negligence of one who receives an injurious shock or is killed by the sagging of an electric wire over the highway is for the determination of the jury."

reasonable minds would reach the conclusion that the facts failed to establish due care on the part of the plaintiff."

In *Henderson* v. *Kansas Power & Light Co.* (1959), 184 Kan. 691, 339 P. 2d 702, two men were electrocuted and the plaintiff severely injured when electricity from the defendant's power line jumped into the mast portion of a television antenna, which the three men were turning. The Supreme Court of Kansas refused to find contributory negligence as a matter of law, stating, at page 702:

" '* * * Mere knowledge of the danger of doing a certain act without a full appreciation of the risk involved is not sufficient to preclude a plaintiff from recovery even though there may be added to the danger a comprehension of some risk. * * *'

"* * * *The ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless.*"

And in *Groh* v. *Philadelphia Electric Co.* (1970), 441 Pa. 345, 271 A. 2d 265, a case with facts similar to the ones above, the Supreme Court of Pennsylvania noted, at page 350:

"In a long series of cases this court has held that the mere presence of power lines does not indicate an obvious danger and that the public is not charged with knowledge of the amount of current in (and thus the risk associated with) a particular line. [Citations omitted.] Therefore, the mere fact that decedent saw or should have seen the lines does not make him contributorily negligent as a matter of law."

That same court had earlier announced, in *Stark* v. *Lehigh Foundries* (1957), 388 Pa. 1, 8, 130 A. 2d 123, that:

"Wires charged with an electric current may be harmless, or they may be in the highest degree dangerous. The difference in this respect is not apparent to ordinary observation, and the public, therefore, while presumed to know that danger may be present, are not bound to know its degree in any particular case."

See, also, *Burk* v. *Missouri Power & Light Co.* (Mo.,

1967), 420 S. W. 2d 274; *Lancaster* v. *Potomac Edison Co. of West Virginia* (W. Va. 1972), 192 S. E. 2d 234; and *Mark* v. *Pacific Gas & Electric Co.* (1972), 7 Cal. 3d 170, 496 P. 2d 1276.[3]

Courts have found, in these cases and others, that reasonably prudent men know little of the attributes and dangers of high-voltage electricity. Courts have discovered that reasonably prudent men are marginally able, at best, to distinguish between those overhead wires which are dangerous, and those which are not. This fundamental truth was demonstrated anew in the present case, wherein

---

[3]We do not imply that the proposition urged by the appellee is totally devoid of support. In *Goetz* v. *Green River Rural Electric Cooperative Corp.* (Ky. 1966), 398 S. W. 2d 712, for example, the court held that the plaintiff's failure to observe power lines while climbing a television tower to install an antenna, which antenna was blown by a gust of wind onto the wire causing the owner to fall, was contributory negligence as a matter of law.

In dissenting from that judgment, Judge Milliken, at page 714, stated:

"There is no evidence that Goetz actually saw the power line—but let us assume that he is charged with the responsibility for having seen it. What would he have seen? The evidence reflects that the lines are slightly smaller than an ordinary house service electric line; their darkened color, admitted in evidence, readily presented the appearance that the lines were insulated. While it is true that it is not practicable to insulate high voltage lines, it is both practicable and usual that normal service lines are insulated. The simple truth is that Goetz (or the ubiquitous ordinary man exercising the care usual in such circumstance) could very well have believed that these lines were nothing more than telephone lines, telegraph lines, or innocent insulated house service electric lines. All of which is to point up the fact that these lines presented an innocent, innocuous appearance—not an appearance of deadliness or extreme hazard. I think it is obvious that an ordinarily prudent person will take for granted, uncritically, those surroundings and circumstances which do not present to him an obvious danger. By way of illustration—Goetz would certainly have noticed and acted accordingly if he had seen or heard a tiger on that pole—he may have dismissed a squirrel as inconsequential. I like to believe that I am a reasonable man, and it disturbs me that the majority of my colleagues conclude as a matter of law that reasonable men cannot differ on the legal consequences of a factual situation like this."

a plethora of witnesses was questioned as to the character of the power lines running alongside the Lazar house.

Jerry Circillo, the owner of a television antenna installation firm, testified that wires strung overhead were "not necessarily" dangerous, and might "possibly" carry electrical current. When asked whether he examines the wires near the roof of a home before ascending, he responded, "briefly."

Mr. Samuel Meldon, president of Melbrooke Company and the builder of homes over an 18-year period, was asked:

"Q. Did you ever have any discussion, Mr. Meldon, with anyone from the C. E. I. company that would indicate the voltage that was going through those lines?

"A. No, sir.

"Q. Did you know, sir, the top two lines were uninsulated?

"A. No, sir.

"Q. Did you know they were high tension wires or hot wires?

"A. I know they were power wires.

"Q. Well, sir, you have been in the building business for 17 years, right?

"A. Yes.

"Q. During the course of 17 years, I am sure that you have constructed homes in some proximity to C. E. I. wires, isn't that correct, sir?

"A. Yes.

"Q. And you have never in all your 17 years been aware of a hot wire, or a high tension wire or call it what we want?

"A. Call them feeder lines, anything. I don't know what you want to call them. I know there is wires up there.

"* * *

"Q. When you gave this home to John and Carol Lazar, it was foreseeable that people would use that roof?

"A. Yes.

"Q. At that time these wires were running in close proximity to the home, right?

"A. That fact has been established.

"Q. Wasn't it not foreseeable that somebody might come in close proximity to those wires?

"Mr. Crawford: Objection, your Honor.

"A. *They were not dangerous.*" (Emphasis added.)

Earl Kolthoff, a claims investigator and adjuster for CEI, related that despite 42 years of experience he still was unsure that the wires running near the roof of the Lazar property carried 4,800 volts.

Finally, Dennis Lazar, while being cross-examined as to his knowledge of, and experience in dealing with, high tension power lines, was asked:

"Q. And when you came to this particular house of your brother's, you had no knowledge of wires or electricity or those which were in the neighborhood of the house?

"A. None, sir.

"Q. In the course of the time that you worked with Jerry, you picked up no knowledge in addition?

"A. Knowledge of what?

"Q. Electricity?

"A. No, sir, not electricity.

"Q. None at all?

"A. No, sir."

The four whose testimony we recite are not "unreasonable" men. Despite diverse backgrounds, the knowledge of each concerning high voltage electricity was minimal. We do not believe their testimony, and the knowledge reflected therein, to be atypical.

It is one thing to say that reasonable men are familiar with electricity in the home, a low voltage variety which under normal use is rarely dangerous. The individual is uncommon who has not incurred a shock while employing a household appliance, or plugging in an electric cord. But to assert that most men could distinguish harmless telephone lines from deadly electric power lines, if both were observed, is a thing quite apart. Reasonable men have the vague notion that some power lines are dangerous. They probably know little more.

The definition of reasonable conduct may differ depending upon the circumstances. The presence of a con-

spicuously posted sign, warning of danger due to high voltage power lines, will normally be sufficient to put the reasonable man on notice. Power lines strung from towers, flung far into the sky and away from human habitation, may well be adequate warning to all. And the man with special skill or training, the one who both recognizes *and appreciates* the danger presented by an uninsulated electrical wire, will be held to a higher standard of care than his less well-educated counterpart. But that skilled technician is not this plaintiff, and those warning signs and towers are not included in the circumstances of this case.

A finding of contributory negligence on the part of a plaintiff involves the interplay of complex, and perhaps contradictory, factors. In addition to the knowledge imputed to the plaintiff, one must consider any special knowledge on his part, any external indicia which warns of danger, the culpability of the defendant, and the totality of circumstances under which the accident occurred. These are considerations uniquely tailored to the jury function. Absent evidence so clear that reasonable minds could not differ with regard to it, a holding that conduct is contributorily negligent as a matter of law is improper.

This court is not prepared to say that the jury's finding of negligence-free conduct by the appellant in the present case is contrary to law. Nor is this court prepared to say that one who grabs a nearby wire while falling off a roof, or who touches such a wire while gesturing to a co-worker, is contributorily negligent as a matter of law for so doing. For these reasons, the judgment of the Court of Appeals is reversed as to CEI, and the judgment of the Court of Common Pleas reinstated.

*Judgment reversed in part.*

O'Neill, C. J., Corrigan, Celebrezze and W. Brown, JJ., concur.

Herbert and Stern, JJ., dissent.

STERN, J., dissenting. It is accepted in the present appeal that the power company was negligent in allowing its power wires to sag close to a house roof, although the wires were originally set at a proper height. The power company is held to have a duty to inspect its lines, to recognize possible dangers caused by sagging wires, and to take proper action to avert such danger. Yet, the majority holds today that the injured plaintiff in this case was not negligent, although the wires were in plain and unobstructed view, and plaintiff failed to look and see them, or to otherwise exercise due care for his own safety. The apparent reason for this holding is that the danger from the wires was not reasonably obvious or foreseeable. The majority goes on to suggest that the actual danger could have been made foreseeable by signs or other warnings. Presumably, this holding could be taken to mean that the power company has a duty to warn of the danger of all its high tension lines, and that it could be liable even if its wires were at a proper height, for example, if plaintiff, while installing a TV antenna, failed to see the wires and touched them with the antenna. Leaving aside the problem of where a sign should be placed so that it gives adequate warning to a plaintiff who fails to see poles and wires, this division of the duty of care between power companies and individuals is squarely in conflict with this court's decision in *Hetrick v. Marion-Reserve Power Co.* (1943), 141 Ohio St. 347, 48 N. E. 2d 103. In that case, the court held that a power company "is bound to exercise the highest degree of care consistent with the practical operation of such business" in the erection and maintenance of power lines. However, the power company is not an insurer and need not give warnings of the dangers of suspended, uninsulated high-tension wires. The court, at page 356, in that case, stated that "the presence of * * * suspended wires, in and of themselves, is a warning to the adult public of potential danger, * * *" and, at page 358, the court went on to state that "in exercise of ordinary care it was the duty of plaintiff's decedent to make use of his faculty of sight."

The majority, in a footnote, characterizes this language as *dicta*. In fact, the essential point of that case was precisely to determine the respective duties of care of power companies and individuals with regard to the dangers of high-tension, uninsulated power transmission wires. Such wires are inherently dangerous, and are accepted because that danger is considered justifiable in view of our society's needs for electric power. This court's decision in *Hetrick* made clear that the power company must exercise the highest degree of care, and that an individual is correspondingly expected both to recognize the inherent danger of suspended wires and to exercise due care in light of that visible danger. Where, as here, plaintiff exercised no care for his own safety, he has failed to meet that duty and is negligent as a matter of law. The same rule is applied by a good number of other courts. *Craft* v. *Fordson Coal Co.* (1933), 114 W. Va. 295, 171 S. E. 886; *Southern Maryland Electric Cooperative* v. *Blanchard* (1965), 239 Md. 581, 212 A. 2d 301; *Goetz* v. *Green River Rural Electric Coop. Corp.* (Ky. 1966), 398 S. W. 2d 712; *Hamilton* v. *Southern Nevada Power Co.* (1954), 70 Nev. 472, 273 P. 2d 760.

There may well be cases where electric wires are concealed; where the wires are apparently insulated or dead; where the injured plaintiff either reasonably failed to recognize the danger; or where, notwithstanding that plaintiff recognized the danger and acted with due care, he touched the wire and was injured. None of these apply to the case at bar.

The dangers of suspended wires are obvious, even if the exact degree of danger is not, and the fact that the wires were in plain view was sufficient warning to a reasonably prudent adult. The negligence of the power company was a proximate cause of plaintiff's injury, and I believe it is apparent as well that the plaintiff's failure to look and perceive the clearly visible danger of the wires, and his consequent failure to exercise due care for his own safety, was also negligence which contributed to the injury.

Under present Ohio law, such contributory negligence, however slight, would be an end to the case and a bar to any recovery. The decision of the majority may well reflect a recognition of the potential injustice of the contributory negligence rule which denies all recovery to an injured plaintiff when he is negligent in any degree. The instant case is a good example of the apparent inequity of the all-or-nothing rule of contributory negligence where applied to the complex and multifarious activities of modern life. A jury is instructed that it can give no recovery to a plaintiff who has clearly been injured by defendant's negligence, if the plaintiff has also been negligent, no matter in how much lesser a degree. Most likely, the jury will devise and apply its own form of comparative negligence by a compromise in the award of damages.

The instant case does not directly raise these questions concerning contributory negligence, nor does it provide a basis for consideration of the rule by this court. But it does suggest the need for a reappraisal of the contributory negligence rule, by this court or by the General Assembly, as to whether Ohio should follow the example of various other states and adopt some form of comparative negligence. See, e. g., *Nga Li.* v. *Yellow Cab Co. of California* (1975), 119 Cal. Reptr. 858, 532 P. 2d 1226; Schwartz, Comparative Negligence, 1974; Prosser, Comparative Negligence, 51 Mich. L. Rev. 465 (1963).

Under our present law, I can only conclude that the plaintiff herein was contributorily negligent as a matter of law, and for that reason I dissent.

HERBERT, J., concurs in the foregoing dissenting opinion.