**Joann ANGEL, Administratrix of the Estate of Jerry Angel, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–1–81–0880.**

United States District Court, S.D. Ohio, W.D.

Nov. 12, 1986.

**436**

A.P. Anninos, Eli Namanworth, Cincinnati, Ohio, for plaintiff.

Donetta Wiethe, Cincinnati, Ohio, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court on remand from the United States Court of Appeals for the Sixth Circuit, which directed this Court to make the following Findings of Fact. *Angel v. United States*, 775 F.2d 132 (6th Cir.1985).

1. As a matter of *fact*, did the decedent know or should he have known that the transformer installation was dangerous. *Id.* at 138 n. 11.

2. Was harmful contact with the high voltage wire in question unforeseeable, either generally or under the specific circumstances in which decedent was working. *Id.* at 143.

3. Was it foreseeable when this installation was constructed that at some point persons working either on or near it would come in close proximity with this wire, making some sign or other warning on the installation appropriate. *Id.* at 143.

4. Was the warning sign on the transformer installation legible and conspicuous at the time of the accident. *Id.* at 143.

5. Was it foreseeable that sandblasters working on a building the peak of which is four and one-half feet below and seven feet

distant from a high voltage line might come in contact with it during the course of the work. *Id.* at 143.

6. Did DESC inspector Carl Gibson see aluminum ladders being used on the site in such a way that the possibility of injurious contact with the wire may have been foreseeable. *Id.* at 144.

7. What percentages of fault are attributable to the decedent and to the United States, in accordance with the Ohio comparative negligence statute, O.R.C. section 2315.19. *Id.* at 146.

8. Was the plaintiff indigent at the time she caused witnesses to appear in this case. *Id.* at 146.

The United States Court of Appeals for the Sixth Circuit also directed that the following Conclusions of Law be determined.

A. Was the United States negligent *per se* for the breach of any duty owed to the decedent pursuant to OSHA regulations. *Id.* at 144.

B. Was the decedent negligent *per se* for the breach of the duties imposed by OSHA regulation. *Id.* at 144.

By agreement of counsel this matter was submitted on briefs. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does submit its Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

1. *Decedent knew or should have known that the transformer installation was dangerous. He failed to use reasonable care for his own safety.*

The United States Court of Appeals for the Sixth Circuit noted there is evidence from the record from which the district court could conclude, as a matter of fact, that the decedent knew or should have known that the transformer was dangerous. *Angel*, 775 F.2d at 138 n. 11.[1] This Court so finds.

---

**1.** The United States Court of Appeals for the Sixth Circuit cited the deposition testimony of

James King, who was sandblasting the building along with the decedent:

Such finding of plaintiff's knowledge comports with Ohio law developed in the case of *Lazar v. Cleveland Electric Illuminating Co.*, 43 Ohio St.2d 131, 331 N.E.2d 424 (1975).

While the Ohio Supreme Court held in *Lazar* that the mere presence of power lines does not present an open and obvious danger to the public, *Id.* at 139 n. 2, 331 N.E.2d 424, it also recognized that an individual working around electricity, who is aware of the danger or should be aware of the danger, could be contributorily negligent. *Id.* at 131, 331 N.E.2d 424.

In the syllabus, the Court stated that such negligence can be demonstrated by evidence that "clearly shows that the plaintiff was or should have been conscious of the existence of facts from which a reasonably prudent man would have foreseen the presence of such wire, or, having seen them, have recognized their dangerous propensities." *Id.* In Ohio, the syllabus states the governing legal principles of the case. *Cassidy v. Glossip*, 12 Ohio St.2d 17, 231 N.E.2d 64 (1967).

As required by the *Lazar* decision, the evidence is clear that the decedent recognized the transformer's dangerous propensities. *Angel*, 775 F.2d at 138 n. 11.

While it is undisputed that this Court may not presume the decedent's knowledge of the hazard of the uninsulated high voltage electric wire, based upon the nature of

"Q. On your first visit to the site do you recall observing the presence of power lines in and about the buildings you were going to be working on?

A. I'm going to say yes, because we always do. I mean, you think about that as part of what you do.

Q. And you think about it as part of what you do because that's one of the hazards that you've got to be sure to stay clear of?

A. That's one of the hazards we deal with all the time, right.

Q. Power lines?

A. Power lines, roof heights and those kinds of things. That's the kind of thing we deal with.
....

Q. Based on your knowledge of Mr. Angel's job performance prior to this job when the accident happened, what did you know about him as far as being safety conscious?

A. While working for me I have not known him to take undue chances. I mean, *the nature of the business itself is risk*, but I have not known him to take undue risk.

Q. *Did you know from your experience that he was knowledgeable of the risks involved in this business?*

A. *Yes.*

Q. Did you know him to be aware in particular of the risks of power lines that may be in the vicinity of work sites?

A. I guess we never talked about it as an item within itself, *but I'm sure he's aware of the danger of power lines.*
....

Q. On those prior occasions did you observe him working with ladders in the vicinity of electrical wires?

A. All the occasions, no. Some occasions there were electric wires around.

Q. In the standblasting [sic] work that you're familiar with are the electrical wires a common hazard that you have to be careful of?

A. Yes." (emphasis added)
"....

Q. On that particular occasion when Jerry was with you at the time you reviewed the job site before starting the job were these wires and these power installations or power units, I should say, present?

A. Yes.

Q. Did you observe them at that point in time?

A. Yes.

Q. Did you have any difficulty ascertaining that those power lines were present by building 26?

A. No.

Q. Is it fair to say that those power lines and that installation of a power unit is apparent?

A. Yes.

MR. ANNINOS: I'll Object.

[King Dep. at 28–29, 30–31, 83–84, 85–86]" (emphasis added).

The Appellate Court also cited the testimony of William Slusher, decedent's partner in Riteway:

"Q. So, the practice of your company back in 1979 was that if you identified an electrical hazard that may interfere with your work, you would take action to either avoid it or have it protected; is that a fair statement?

A. Yes, that is usually left up to the owner because the owner knows the building, you know, and he knows the details about the dangers on the job.

Q. But, sir, you know your work as a sandblaster.

A. Right.

Q. And you have been in situations where there are bare wires that may get in the way of where you work. And if that is the situation, you take action to protect yourselves; am I right in saying that?

A. Yeah. We would notify the owner. Yes. [Tr. II–139]"

decedent's occupation and experience, *Angel*, 775 F.2d at 140 n. 13, *Lazar* teaches that a court may consider many factors, when appropriate, to decide whether a plaintiff had knowledge of a dangerous electrical wire:

> A finding of contributory negligence on the part of a plaintiff involves the interplay of complex, and perhaps contradictory, factors. In addition to the knowledge imputed to the plaintiff, one must consider any special knowledge on his part, any external indicia which warns of danger, the culpability of the defendant, and the totality of circumstances under which the accident occurred.

*Lazar*, 43 Ohio St.3d at 144, 331 N.E.2d 424.

■ Following these guidelines, this Court concludes, by a preponderance of the evidence, that the decedent recognized the electrical hazard—an electrical transformer, as distinguished from a mere sagging wire as was the case in *Lazar*. Such knowledge can be imputed to the decedent by means of the testimony of fellow sandblaster James King and decedent's partner William Slusher, cited in *Angel*, 775 F.2d at 138 n. 11. While the transformer structure may not be considered a warning in itself, *Id. at 143*, it does fall into the category of "external indicia which warns of danger." *Lazar*, 43 Ohio St.3d at 144, 331 N.E.2d 424. The "totality of the circumstances under which the accident occurred," *Id.*, leads the Court to conclude the decedent did possess knowledge of danger.

Plaintiff further speculates that if the decedent were at all aware of the danger, he at most believed the lower level uninsulated wire was of minimal voltage and only a minor shock were possible. (Doc. 133, pp. 3, 4).

The Court finds it difficult to believe that a prudent sandblaster would place his metal ladder in close proximity of a power line because he would not mind suffering a less-than-fatal shock. Only a negligent workman would risk suffering any shock from overhead wires, and the government has no duty to foresee such negligence.

The decedent knew of the power line's dangerous propensity, yet he negligently brought his metal ladder into contact. The decedent's knowledge and conduct make him contributorily negligent for the accident.

2. *Harmful contact with the high voltage wire in question was unforeseeable by the United States both generally and under the specific circumstances in which decedent was working.*

In this connection the Court will discuss the government's duty of care as owner of high voltage wires and the foreseeability of the decedent's accident.

In considering the defendant's duty of care, the Appellate Court noted in its opinion that the United States, in this case, is not an insurer and is not liable for the negligence of its independent contractor, but may be liable for its own negligence. *Angel*, 775 F.2d at 140.

The decedent's status was that of an independent contractor employed by the defendant to sandblast buildings that were government owned. He was not employed to repair the electrical wires or the transformer.

The plaintiff maintains the defendant had a duty to warn the decedent, as a frequenter or business invitee, of any dangers reasonably foreseeable, and that her decedent's injury was foreseeable. *Angel*, 775 F.2d at 137.

The Ohio Supreme Court's decision in *Hirschbach v. Cincinnati Gas & Electric Company*, 6 Ohio St.3d 206, 452 N.E.2d 326 (1983), explained when one who employs an independent contractor can be held liable, pursuant to the Ohio "frequenter" statutes (R.C. 4104.01 *et seq.*), for injuries sustained by the independent contractor's employees.

> One who engages the services of an independent contractor, *and who actually participates in the job operation* performed by such contractor and thereby fails to eliminate a hazard which he, in

the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.

*Id.* (emphasis added)

█ In *Hirschbach,* the Ohio Supreme Court expressly limited an owner's liability to a situation where the owner *actually participated* in the job operation. *Id.* In the case at bar, the defendant United States did not actually participate in the sandblasting operation, and cannot be held liable for the decedent's death.

Plaintiff's reliance upon the Ohio appeals court decision of *Walker v. Mid-States Terminal,* 17 Ohio App.3d 19, 477 N.E.2d 1160 (1984), is misplaced. *Walker* is no longer the law of Ohio.

The Ohio Supreme Court, in a January 22, 1986 decision, reaffirmed the vitality of the *Hirschbach* "actual participation" rule, and put the *Walker* appeals court decision to rest, in the case of *Cafferkey v. Turner Construction Co.,* 21 Ohio St.3d 110, 488 N.E.2d 189 (1986).

A general contractor who *has not actively participated* in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work.

*Id.,* syllabus, (emphasis added)

It is helpful to compare the facts of the *Hirschbach* case with the facts of the *Cafferkey* case, in order to understand the meaning of the words "actively participated," and to apply the law to the case at bar.[2]

In the *Hirschbach* case, the defendant Cincinnati Gas & Electric Company retained an independent contractor to repair the defendant's electrical tower. *Hirschbach,* 6 Ohio St.3d at 259, 452 N.E.2d 326. Hirschbach, an employee of the independent contractor, died when the tower broke

under tension from CG & E's winch line. *Id.* at 260, 452 N.E.2d 326.

The decedent Hirschbach was performing inherently dangerous work at the time of his death, as he was an electrical lineman. *Id.* at 259, 452 N.E.2d 326. Under previous case law, an independent contractor's employee could not recover from the owner/general contractor when an injury resulted from risks inherent in the independent contractor's assigned task. The case of *Wellman v. East Ohio Gas Co.,* 160 Ohio St. 103, 113 N.E.2d 629 (1953) is the leading case on barring recovery under such circumstances. *See also Schwarz v. General Electric Realty Corp.,* 163 Ohio St. 354, 126 N.E.2d 906 (1955); *Evans v. Whirlpool Corp.,* 10 Ohio St.2d 240, 227 N.E.2d 208 (1967); and *Briere v. Lathrop Co.,* 22 Ohio St.2d 166, 258 N.E.2d 597 (1970).

However, the *Hirschbach* Court found a "controlling and dispositive factual distinction" in the case which made the *Wellman* rule inapplicable. The key difference was that the decedent Hirschbach and some of his fellow linemen, prior to Hirschbach's death, had requested permission from the defendant CG & E to position a winch tractor a safe distance from the tower. *Hirschbach,* 6 Ohio St.3d at 260, 452 N.E.2d 326.

The defendant CG & E denied the request because the defendant did not want to be responsible for any resulting damages to park land where the winch tractor would have been moved. *Id.*

In reversing summary judgment for the defendant CG & E, the Ohio Supreme Court said that a jury could conclude that "CG & E had sole control over the safety features necessary to eliminate the hazard." *Id.* at 208, 452 N.E.2d 326.

By denying the crew its request to reposition the winch tractor, the Court said a jury could conclude that CG & E "*actually participated in the job operation* by dictating the manner and mode in which the

**2.** The Ohio Supreme Court in *Cafferkey* appears to use the phrase "actively participated" in the same spirit as the Court used the phrase "actual-

ly participated" in its earlier *Hirschbach* decision. *Cf. Foraker v. Cyclops Corp.,* 605 F.Supp. 641, 650 n. 6 (N.D.Ohio 1985).

winching phase of the job was to be performed." *Id.* at 261, 452 N.E.2d 326.

The Court in *Hirschbach* did not overrule the *Wellman* line of cases. *Id.* at 260, 452 N.E.2d 326. Rather, the Court agreed that the *Wellman* line of cases were not applicable to the factual situation in the *Hirschbach* case.

■ *Cafferkey* holds that the test for "actual participation" focuses on whether the owner or general contractor gave or denied permission for the critical acts that led to the decedent's injuries. *Cafferkey,* 21 Ohio St.3d at 112, 488 N.E.2d 189. Without such a showing, the general contractor cannot be held liable, because he did not "actually participate" in the job operation.

In *Cafferkey,* the defendant general contractor retained an independent contractor to drill and install caisson foundations. *Id.* at 110, 488 N.E.2d 189. The general contractor retained some supervisory control over the independent contractor and imposed some safety requirements. *Id.* at 113, 115, 488 N.E.2d 189.

In one of the caisson holes, the independent contractor detected methane gas and made certain efforts to dispel the gas. *Id.* Later, the independent contractor sent two employees into that caisson hole, in order to free a twister bar that had become jammed. While in the hole, one of the employees struck his flint to light the torch and an explosion of methane gas occurred. Both men died. *Id.* at 110, 488 N.E.2d 189.

The Ohio Supreme Court affirmed a finding that, as a matter of law, at the time of the explosion the general contractor owed no duty of care to the decedents. *Id.* at 111, 113, 488 N.E.2d 189.

In this case, the defendant United States never "actually participated" in the sandblasting operation that the decedent performed because it neither gave nor denied permission for the critical acts that led to the decedent's injuries—the placing of a metal ladder close to an uninsulated power wire.

■ The Court rejects plaintiff's assertion that *Cafferkey* applies only to cases involving defendant general contractors (doc. 139, p. 1), and not to defendant landowners, as is the case here. The Ohio Supreme Court in *Cafferkey* made no such distinction. In fact the *Cafferkey* decision, which involved a defendant general contractor, is based in large part on *Hirschbach,* 6 Ohio St.3d 206, 452 N.E.2d 326 (1983), which involved a defendant landowner, Cincinnati Gas & Electric Co. The 1985 decision in *Foraker v. Cyclops,* 605 F.Supp. 641 (N.D.Ohio 1985), upon which plaintiff relies (doc. 139, p. 3), was rendered without benefit of the later, 1986 decision of the Ohio Supreme Court in *Cafferkey.*

■ Plaintiff's argument fails that sandblasting is not inherently dangerous work. (Doc. 139, p. 2). Sandblasters are hired to perform the inherently dangerous job of working on the sides of buildings, sometimes skyscrapers. Inherent in the dangerous work of sandblasting is the sandblaster's job of carrying and positioning metal ladders around electrical power lines. *See* deposition testimony of James King, who was sandblasting the building along with the decedent. *Angel,* 775 F.2d at 138 n. 11.

Thus, the defendant United States cannot be held liable, pursuant to the Ohio "frequenter" statutes (R.C. 4104.01 et seq.), for the decedent's accident since it owed no duty of care to the independent contractor.

Nor can the United States be held liable under its reservation of the right to inspect safety conditions of the workplace. Such reservation did not create a duty of care to warn the decedent of the hazard of the uninsulated high voltage wire.

The plaintiff contends in this regard that because the defendant United States reserved the right to inspect the safety conditions of the workplace and to inspect the ladders, the government maintained custody and control of the premises and therefore can be held liable for the decedent's death. (Doc. 133, p. 14).[3]

---

**3.** The United States in the instant case reserved the rights pursuant to ASPR sections 7–602.42(c)

■ Such custody and control of the premises is not determinative in deciding the duty of care owed to an independent contractor pursuant to Ohio's "frequenter" statutes.

The only determinative issue is whether the defendant "actively participated" in the job operation. *Cafferkey*, 21 Ohio St.3d 110, 488 N.E.2d 189.

■ A reservation of certain rights of inspection does not constitute an "actual participation" in the job operation.

Although the defendant contractor in *Cafferkey* also had retained control over certain safety procedures at the project site by contract and by means of a safety manual, *Id.* at 113, 488 N.E.2d 189,[4] the Court held that such involvement was not actual or active participation by the general contractor in the job operation.

> [T]his concern for safety, which was evidenced in a variety of ways, does not constitute the kind of active participation in Millgard's (the independent contractor) work that is legally required to create a duty of care extending from Turner (the general contractor) to Millgard's employees.
>
> *Id.*

The rights of inspection that the general contractor in *Cafferkey* reserved were analogous to the rights reserved by the government in the case at bar. *See infra* footnotes 3 and 4.

*Cafferkey* is binding and mandates a holding that such reservation of rights do not constitute "actual participation" or "active participation" in the sandblasting operation.

3, 4 and 5. *It was not foreseeable when this installation was constructed that at some point persons working near it would come in close proximity with this wire, although it might have been foreseeable that at some point persons working on the installation itself would do so. No sign or other warning on the installation was necessary to warn invitees not working on the installation itself. The signs themselves were adequate to warn workers repairing the line and transformer.*

■ A safe distance existed between the transformer and the worksite, so no accident was foreseeable, and no sign was necessary to warn business invitees not working on the transformer itself.

Undisputed expert testimony established that the United States complied with the National Electric Safety Code (hereinafter NESC) in regards to safety and clearance requirements for Building 26, (Tr. Vol. II, p. 52), and that no sign to warn a person on the ground was required of this facility. (Tr. Vol. III, pp. 48, 66).

The plaintiff dismisses compliance with the NESC as irrelevant and immaterial because, the plaintiff argues, it is not of consequence to the determination of foreseeability. (Doc. 135, p. 3).

However, in *Lazar, supra,* the Ohio Supreme Court referred to the same safety code the plaintiff urges this Court to ignore. ("It is undisputed that CEI [the defendant] stood in clear violation of safety standards promulgated in the National Electric Safety Code." *Id.* 43 Ohio St.2d at 132, 331 N.E.2d 424).[5]

---

& 7–602.43—the right to inspect, require compliance by the contractor with necessary safety measures and to halt work if such compliance is not forthcoming. *Angel,* 775 F.2d at 141.

**4.** The general contractor in *Cafferkey* reserved the right to stop any part of the work which the general contractor deemed unsafe, and to undertake corrective measures if the subcontractor failed to do so, at the subcontractor's cost. *Cafferkey,* 21 Ohio St.3d at 115, 488 N.E.2d 189 (Brown, J., dissenting).

The general contractor, in safety bulletins, took responsibility for general conditions which

exist on each project; required subcontractors to adhere to the safety requirements and noted that constant supervision by the superintendent was required to eliminate unnecessary hazards. *Id.* at 116, 488 N.E.2d 189.

**5.** *See also Cleveland Electric Illuminating Co. v. Mayfield,* 53 Ohio App.2d 37, 44, 371 N.E.2d 567 (1977), citing *Hetrick v. Marion-Reserve Power Co.,* 141 Ohio St. 347, 358, 48 N.E.2d 103 (1943). ("The NESC has been promulgated by the National Bureau of Standards and accepted as a safety standard by the Ohio Public Utilities Commission (Adm.Order No. 72), as well as by

█ Compliance with a national safety code recognized by the Ohio Supreme Court may not end an inquiry into foreseeability. But the Court considers the defendant's compliance significant in deciding the threshold issues of foreseeability and duty of care.

A sign or other warning on the installation might have been appropriate to alert a person working on the installation itself, and in fact a legible, conspicuous sign existed at both six and twelve feet on the installation. However, the United States never undertook a duty to warn the decedent or any other person on the ground by the posting of signs on the transformer installation.

█ The defendant's duty to properly warn persons working on the installation itself is not at issue in this case. The decedent was not working on the installation. The decedent's negligence would have occurred with or without a legible and conspicuous sign on the transformer. The sole proximate cause of the decedent's death was his own negligence.

No other sign, such as a sign designed to warn invitees on the ground, was appropriate because an invitee on the ground could not be injured. Only an invitee on the ground with a device that would transmit electrical energy from the nineteen-foot high line could possibly be injured.

It was not foreseeable that sandblasters working on a building the peak of which is four and one-half feet below and seven feet distant from a high voltage line might come in contact. The work of sandblasting the building did not involve the power line or the transformer.

The United States Court of Appeals for the Sixth Circuit directed this Court to consider whether the accident was foreseeable generally and under the specific circumstances of this case. *Angel*, 775 F.2d at 143.

In connection with this inquiry, the Court also should decide whether it was foreseeable that the decedent would act negligently by bringing the aluminum ladder near the wire. *Id.* at 142.

The Court has found that the harmful contact with the wire was unforeseeable generally. Findings of Fact 3, 4 and 5, *supra* p. 12. In addition the Court finds that decedent's negligence was unforeseeable under any circumstances.

Under Ohio law, landowners generally owe no duty of care to independent contractors hired to perform potentially dangerous work. It is the inherent dangers or risks involved in a job that often motivates a landowner to hire a subcontractor possessing the special skills or knowledge to handle those problems. *Foraker v. Cyclops Corp.*, 605 F.Supp. 641, 651 (N.D.Ohio 1985).

The decedent here was the expert in sandblasting and knew or should have known of the dangers involved in working near power lines. *Angel*, 775 F.2d at 138 n. 11.

Plaintiff seems to assert that the United States was the expert in sandblasting, not the decedent. The plaintiff maintains the defendant knew, in explicit detail, how to sandblast a wall safely and thus, the decedent's accident was foreseeable.[6] (Doc.

numerous states. The Supreme Court of Ohio has termed it 'nationally known and nationally recognized by electrical engineers as authority in the erection and maintenance of equipment for transmission and distribution of electrical energy.'")

6. "To sandblast a wall safely, the worker must rest his body against the ladder to gain support so that he may use both hands to manipulate the compression nozzle. In doing so, he sandblasts downward from a height above the work in order to observe the results of the sandblast-

ing and to stabilize his position at the elevated height. He also sandblasts in a downward position because of the weight of the hose and back pressure exerted by the mixture of air and sand emerging from the nozzle. In addition, the ladder must be braced against the structure to be sandblasted at a large angle to the building in order to form a broad, stable base at ground level (the hypotenuse of the triangle). Thus, it is necessary that the ladder used in sandblasting be higher than the work to be sandblasted." (Plaintiff's doc. 133, p. 11).

133, p. 11.). The Court is unwilling to impose such a duty.

The conditions in question were not dangerous to the ordinary frequenter of the premises. Only a person equipped with a metal object long enough to reach the wire faced any hazard. To categorize the decedent's negligence as "foreseeable" would be to establish an "unreasonable standard of perfection" upon the defendant. *Goldman v. United States*, 790 F.2d 181, 184 (1st Cir.1986).

6. *DESC inspector Carl Gibson did not see aluminum ladders being used on the site in such a way that the possibility of injurious contact with the wire may have been foreseeable.*

The plaintiff contends that the presence of Defense Electronics Supply Center (DESC) inspector Carl Gibson at the work site created a duty of care by the defendant United States to warn of the hazards of using a metal ladder near a power line. (Doc. 133, p. 12.)

Use of a metal ladder near electrical conductors is prohibited by OSHA regulation 29 C.F.R. section 1926.450(a)(11). *Angel*, 775 F.2d at 135.

Mr. Gibson's involvement in the sandblasting project as a quality assurance inspector—not a safety inspector—limited his supervisory participation. *Id.* at 134.

Mr. Gibson did not observe the metal ladders being used in a hazardous way.

Regulation 1926.450(a)(11) does not prohibit metal ladders on DESC property. The regulation prohibits the use of metal ladders only "where they may contact electrical conductors." It is clear that plaintiff's decedent could bring onto the property wooden ladders of any length; metal ladders of any length below 19 and one-half feet and metal ladders of any length where they would not be in a position to contact electrical conductors. Three sides of Building 26 were devoid of any electrical connection. Even the north side was free from danger because the electrical wires supplying the building were insulated.

The Appellate Court noted that the government was not required to constantly monitor the work site to insure the ladder would not be brought into contact with the electrical wire. *Angel*, 775 F.2d at 144. Absent constant monitoring, nothing could have prevented the decedent's injury.

In summary, the decedent's negligence was the sole proximate cause of an accident that inspector Gibson had no way of foreseeing.

7. *In view of the foregoing, the Court need not apportion negligence between the parties since plaintiff's decedent was more than 50 percent contributorily negligent.*

8. *In view of the undisputed evidence that plaintiff received $25,000 from another defendant in settlement, the Court finds that plaintiff was not indigent at the time she caused witnesses to appear in this case. Defendant therefore is not liable for witness fees pursuant to 28 U.S.C. section 1825.*

## II. CONCLUSIONS OF LAW

A. This Court has jurisdiction pursuant to the Federal Tort Claim Act, 28 U.S.C. 1346, 2671 *et seq.*

B. The sole proximate cause of decedent's death was his failure to exercise reasonable care for his own safety.

C. A disregard by a plaintiff of reasonable standards of conduct which, if followed, would have prevented his injury precludes recovery. *Freeman v. United States*, 509 F.2d 626, 631 (6th Cir.1975).

In view of the foregoing determination, plaintiff's complaint should be and it is hereby dismissed at plaintiff's costs.

IT IS SO ORDERED.