836 F.2d 1347
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jo Ann ANGEL, Administratrix, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellees.
 No. 87-3078.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1988.
 
 Before LIVELY, Chief Judge, CORNELIA G. KENNEDY, Circuit Judge, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is an appeal from a judgment dismissing Jo Ann Angel's complaint against the United States under the Federal Tort Claims Act, 28 U.S.C. Secs. 1346(b), 2671 et seq. This is the second time this case has been before this Court, which remanded the case to the district court for further findings of fact and conclusions of law consistent with those findings. The facts of this case are fully set forth in Angel v. United State, 775 F.2d 132 (6th Cir.1985), and need not be repeated here.
 
 
 2
 Although numerous issues have been raised, the central inquiry is whether the district court erred in finding that decedent knew or should have known of the uninsulated wire's hazard and in concluding that the government had no duty to warn decedent of the hazard.
 
 
 3
 The duty of care owed by a property owner to an independent contractor engaging in work on the property derives from the so-called Ohio "frequenter statute," Ohio Rev.Code Sec. 4101.11:
 
 
 4
 Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof ....
 
 
 5
 The Ohio Supreme Court most recently construed the frequenter statute in Eicher v. United States Steel Corp., 32 Ohio St.3d 248 (1987), 512 N.E.2d 1165, as follows:
 
 
 6
 The duty owed to frequenters, i.e., including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge. See, e.g., Westwood v. Thrifty Boy (1972) 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, paragraph one of the syllabus.
 
 
 7
 However, the duty to frequenters of places of employment, as set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor. As stated in Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629: "Where an independent contractor undertakes to do work for another in the very doing of which there are elements of danger * * * danger * * *, no liability * * * ordinarily attaches to the one who engaged the services of an independent contractor." (Emphasis added.) Id. at paragraph one of the syllabus. Such an invitee may recover when the injury results " * * * by reason of the abnormally dangerous condition of the premises, only if the principal employer has, and the servant has not, actual or constructive notice of the existence of such condition." Davis v. Charles Shutrump & Sons Co. (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E.2d 663, paragraph one of the syllabus. See, also, Schwartz v. General Electric Realty Corp. (1955), 163 Ohio St. 354, 358, 56 O.O. 319, 320, 126 N.E.2d 906, 909.
 
 
 8
 Id. at 249, 512 N.E.2d at 1167-68.[1] The Ohio Supreme Court has distinguished situations in which the property owner participates in the independent contractor's project. "One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." Hirschbach v. Cincinnati Gas & Electric Co., 6 Ohio St.3d 206, 452 N.E.2d 326 (syllabus) (1983). Subsequent to Hirschbach, the Ohio Supreme Court has held that "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." Cafferkey v. Turner Construction Co., 21 Ohio St.3d 110, 488 N.E.2d 189 (syllabus) (1986).[2]
 
 
 9
 Under these precedents the owner or general contractor is not an insurer of safety of invitees or subcontractors, but owes a reasonable duty of care which is predicated upon his superior knowledge of hazards on the premises. Jackson v. Kings Island, 58 Ohio St.2d 357, 359, 390 N.E.2d 810, 812 (1979). In those situations where the subcontractor engages in inherently dangerous work in which the hazard is necessarily present and incidental to the work or where he has actual or constructive notice of a latent, dangerous defect on the premises, the owner or general contractor logically owes no duty because he does not have superior knowledge of the hazard to be avoided. Thus, as both parties in this case have recognized, the pivotal issue is whether the decedent knew or should have known about the hazardous uninsulated wire.
 
 
 10
 As stated in our initial determination in this case, under Lazar v. Cleveland Elec. Illuminating Co., 43 Ohio St.2d 131, 331 N.E.2d 424 (1975), dangers of electrical instrumentalities are latent as to the average individual, such that a plaintiff's knowledge of an electrical hazard and corresponding negligence cannot be presumed as a matter of law. Negligence must be demonstrated by:
 
 
 11
 evidence which clearly shows that the plaintiff was or should have been conscious of the existence of facts from which a reasonably prudent man would have foreseen the presence of such wires, or, having seen them, have recognized their dangerous propensities.
 
 
 12
 Id. at 137, 331 N.E.2d at 429. In Lazar it was acknowledged that a finding of such knowledge on the part of the plaintiff involves "the interplay of complex ... factors." Special knowledge on the plaintiff's part, external indicia warning of the hazard, the defendant's culpability, and the totality of circumstances surrounding the accident are all to be considered. Id. at 144, 331 N.E.2d at 433.
 
 
 13
 The district court followed our mandate on remand to consider the issue of the decedent's knowledge in light of Lazar, and found by a preponderance of evidence that he knew or should have known of the electrical hazard. Although there is conflicting evidence in the record, we cannot say that this finding is clearly erroneous. The district court extensively cited and relied on the testimony of James King, who had worked with the decedent for nearly six years and who witnessed the accident. Mr. King testified that power lines were one of the hazards they dealt with routinely in sandblasting, that the very nature of the sandblasting business is risk, and that based on his experience he believed that the decedent was aware of the danger posed by power lines. Indeed, our previous opinion in this case acknowledged that King's deposition was evidence from which a finding of negligence can be made. 775 F.2d at 140 n. 11. Similarly, William Slusher, decedent's partner, testified that they worked around electricity all the time. Slusher stated that they usually left it up to the owner to take care of electrical hazards, but in situations where there were bare wires they would notify the owner. Although Mr. Knopf, decedent's employee, indicated that decedent did not believe there was electricity going into the building, the district court in its function as trier of fact could properly give greater weight to the testimonies of King and Slusher, who had worked extensively with decedent, over that of Knopf, who was on his first sandblasting job when the accident occurred. Moreover, the wires going into the building which Knopf described were insulated and not the one which decedent's ladder touched. As such, we are not convinced that the district court erred and we sustain this critical finding.
 
 
 14
 We also agree with the district court's finding that the government did not actively participate in the sandblasting project so as to be subject to a duty of care toward decedent under the rationale of Hirschbach and Cafferkey, supra. The government's mere right to inspect work and equipment, absent a duty to do so, is clearly not sufficient to constitute active participation. Cafferkey, 21 Ohio St.3d at 113, 488 N.E.2d at 192; King v. Cleveland Elec. Illuminating Co., No. 51420 (Ohio Ct.App. Dec. 11, 1986).
 
 
 15
 Inasmuch as the decedent was properly found to have knowledge of the electrical hazard, no duty to warn the decedent of the dangers ever arose. Moreover, this finding of knowledge renders unnecessary our consideration of subordinate issues raised in this case, e.g., whether sandblasting is an inherently dangerous job, whether the government was negligent due to its alleged failure to post legible warning signs, and whether the injury was reasonably foreseeable. We therefore affirm the judgment of the district court.
 
 
 
 [1]
 The syllabus, which states the governing legal principle in Ohio cases, Cassidy v. Glossip, 12 Ohio St.2d 17, 231 N.E.2d 64 (1967), states: "The duty to frequenters of places of employment, set forth in R.C. 4101.11, does not extend to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor."
 
 
 [2]
 Ohio law does not distinguish the duty owed to frequenters by a landowner from that owed by a general contractor. For example, the decision in Cafferkey, which involved a defendant general contractor, relied extensively on Hirschbach, which involved a defendant landowner