Bell, J.
 

 The single question presented is the correctness of the judgment of the Court of Appeals.
 

 Before directing our attention to that question we shall dispose of certain claims made by the plaintiff.
 
 *354
 
 It is vigorously asserted both in the brief and in oral argument that the Court of Appeals injected into the case a new issue not made by the pleadings or presented to the trial court; the claim being that the judgment of the Court of Appeals is based upon the conclusion that plaintiff’s decedent was a trespasser, and for that reason could not recover.
 

 It is true that the majority opinion of the Court of Appeals does discuss the question of trespass and concludes that Hetrick, the decedent, was a trespasser and for that reason plaintiff could not recover.
 

 However, Section 2, Article IY of the Constitution of Ohio provides in part:
 

 “In cases of public or great general interest the Supreme Court may, within such limitation of time as may be prescribed by law, direct any Court of Appeals to certify its record to the Supreme Court, and may review, and affirm, modify or reverse the judgment of the Court of Appeals.”
 

 This provision grants jurisdiction to this court to review
 
 the judgments
 
 of the Courts of Appeals, and while serious consideration is given to the opinions of those courts, this court is bound by the judgment, not the opinion.
 

 ■ The judgment entry recites, “Find error in that verdict and judgment are contrary to law. Judgment reversed and final judgment rendered in favor of defendant and against plaintiff at costs of plaintiff.”
 

 It is a familiar rule that a reviewing court will not disturb a judgment, if correct, upon the ground that, in the opinion of such reviewing court, incorrect reasons are stated as the basis of such judgment.
 

 Coming now to a consideration of the question whether the record contains evidence of actionable negligence, we are not unmindful of the rule that the plaintiff is entitled to the benefit of the most favorable construction of the evidence of which it is susceptible
 
 *355
 
 .as well as the benefit of all reasonable inferences to be drawn therefrom.
 
 Bauer
 
 v.
 
 Cleveland Ry. Co., ante,
 
 197.
 

 It was necessary however that the plaintiff offer .some substantial evidence of negligence on the part •of the defendant or proof of facts and circumstances from which a reasonable inference of negligence could .have been drawn.
 

 Did plaintiff sustain this burden?
 

 It should be observed at the outset that electricity .is a dangerous and deadly energy and therefore it is the duty of a company transmitting and distributing •electrical current over equipment, including wires attached to poles placed along and upon a public highway, to exercise the highest degree of care consistent with the practical operation of such business in the •construction, maintenance and inspection of such equipment.
 
 Kentucky Utilities Co.
 
 v.
 
 Woodrum’s Admr.,
 
 224 Ky., 33, 5 S. W. (2d), 283, 57 A. L. R., 1054;
 
 Memphis Consolidated Gas & Electric Co.
 
 v.
 
 Letson,
 
 135 F., 969;
 
 Denver Consolidated Electric Co.
 
 v.
 
 Lawrence,
 
 31 Col., 301, 73 P., 39;
 
 Knowlton, Admr.,
 
 v.
 
 Des Moines Edison Light Co.,
 
 117 Iowa, 451, 90 N. W., 818;
 
 Haertel
 
 v.
 
 Penn. Light & Power Co.,
 
 219 Pa., 640; 9 Ruling Case Law, 1199, 1200.
 

 It is a matter of common knowledge that the use of •electrical current has become a household necessity, that the public demands service at reasonable rates and that the company furnishing the service is entitled to a reasonable'profit.
 

 In response to that demand the General Assembly 'has granted permission to telephone and light and power companies to construct lines from point to point ■along and upon any public road by the erection of the necessary equipment, including posts, piers and abut-ments, subject only to the restriction that such installation shall not incommode the public in the use of
 
 *356
 
 public roads. Sections 9170 and 9192, General Code.
 

 It is equally a matter of common knowledge that upon and along almost all of the many thousands of miles of i'oads and streets in Ohio are strung wires of telephone or light companies, or both.
 

 This record discloses that both telephone and light wires carry electrical energy; the difference is only in the intensity of the current. We think that the presence of these suspended wires, in and of themselves, is a warning to the adult public of potential danger.
 

 With these considerations in inind we come now to consider the specifications of negligence and the evidence offered in support thereof.
 

 Specification No. 1. “In transporting and distributing electric current along and just within the right of way of a traveled public road over and through wires attached to small, short and rotten poles.”
 

 Five of the interrogatories as submitted to and answered by the jury are as follows:
 

 Interrogatory No. 4. “Did the road grader or the caterpillar tractor strike a pole of the defendant on county road No. 12, Hardin county, Ohio, on April 25, 1938?” Answer. “Yes.”
 

 Interrogatory No. 10. “If jurar answer to question No. 4 is ‘Yes’ where was the pole located, in the ditch along the road, or in the field?” Answer. “In the ditch along the road.”
 

 Interrogatory No. 12. “If your answer to question No. 4 is ‘Yes’ how far was the pole from the traveled portion of the road?” Answer. “From about five to five and one-half feet.”
 

 Interrogatory No. 13. “If your answer to question No. 4 is ‘Yes’ was that pole tested by employees of the defendant in the early part of April, 1938?” Answer. “Yes.”
 

 Interrogatory No. 14. “If your answer to question No. 13 is ‘Yes’ what were the results of the tests made
 
 *357
 
 by the employees of the defendant at that time'?” Answer. “Sound.”
 

 These answers established as facts that the pole was .located in a ditch a distance of five to five and one-half .feet from the traveled portion of the road and that the pole had been tested in the early part of April 1938, and was sound.
 

 It must be borne in mind that this was a seldom used mud road in the country and the answers to the .five interrogatories dispose of any claim that the location of this pole could or did in any way incommode the public in the use of the road.
 

 Specification No. 2. “In transporting and distributing electric current along and just within the right of way of a traveled public road, over and through wires .attached to short, small and rotten poles, without having said wires insulated in view of and considering the said complained of condition of said poles.”
 

 The gist of this specification is that the wires were not insulated.
 

 In 1929 the General Assembly repealed the statutory requirement that all wires conducting electrical current must be insulated. In view of that fact, together with the fact that the undisputed evidence discloses that these wires were in the open country, not in close proximity to trees or buildings, 20 feet above the .ground, we hold that the company cannot be held negligent merely because the wires were uninsulated.
 

 Specification No. 3. “In transporting and distributing electric current along and just within the right of ~way of a traveled public road, over and through unin-sulated wires, attached to short and slender poles with .a visible Bell Co. emblem imprinted therein, without in some manner warning the public and decedent that •said line was an electric instead of a telephone line” as it in truth and fact appeared to be.”
 

 The record discloses that the pole was purchased in
 
 *358
 
 1927 from the Bell Lumber Company, and that the trade mark used by the lumber company at that time consisted of the emblem of a bell in which was inserted the words, “Bell Lbr. Co. 1927.”
 

 In exercise of ordinary care it was the duty of the plaintiff’s decedent to make use of his faculty of sight. Had he done so he could not reasonably have concluded from the emblem and those words that the poles and wires were equipment of the Bell Telephone Company.
 

 The undisputed evidence is that this installation and maintenance were in conformity with approved methods of the National Electrical Safety Code; that this code is nationally known and nationally recognized by electrical engineers as authority in the erection and maintenance of equipment for transmission and distribution of electrical energy. Upon this record the only reasonable conclusion to be reached is that the power company was not guilty of negligence in the erection and maintenance of this line.
 

 Specification No. 4. “In transporting and distributing electric current along and just within the right of way of a traveled public road on uninsulated wires attached to poles of insufficient size and texture to withstand- a slight impact, and in failing to exercise that care required of persons handling a .dangerous agency.”
 

 This specification brings us to a consideration of the question whether the defendant was negligent in failing to reasonably anticipate such a result.
 

 In 1 Shearman and Redfield on Negligence (Rev. Ed.), 50, Section 24, in discussing the doctrine of reasonable anticipation, it is said:
 

 “Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. , It is always a question of what reasonably prudent men under the same circumstances would or
 
 *359
 
 should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers.”
 

 The citation of a few of the many authorities upon this subject will suffice to show the application of the rule.
 

 In
 
 Palsgraf
 
 v.
 
 Long Island Rd. Co.,
 
 248 N. Y., 339, 162 N. E., 99, 59 A. L. R., 1253, Judge Cardozo, at page 342,.uses this language:
 

 “In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury. ’ ’
 

 In
 
 Depue
 
 v.
 
 Platan,
 
 100 Minn., 299, 111 N. W., 1, in the first paragraph of the syllabus it is said:
 

 “Whenever a person is placed in such a position with regard to another that it is obvious that if he does not use due care in his own conduct he will cause injury to that person, the duty at once arises to exercise care commensurate with the situation in which he thus finds himself to avoid such injury; and a negligent failure to perform that duty renders him liable in damages.”
 

 See, also,
 
 Johnston, Admr.,
 
 v.
 
 United Fuel Gas Co.,
 
 112 W. Va., 578, 166 S. E., 118;
 
 Gerdes
 
 v.
 
 Booth & Flinn,
 
 
 *360
 

 Ltd.,
 
 300 Pa., 586, 150 A., 483;
 
 Koehler, Admr.,
 
 v.
 
 Waukesha Milk Co.,
 
 190 Wis., 52, 208 N. W., 901;
 
 Evers, Admr.,
 
 v.
 
 Davis,
 
 86 N. J. Law, 196, 90 A., 677.
 

 Tested by this rule, can it be said that the power company would or should reasonably have anticipated, that any person traveling by vehicular equipment upon this mud road, would accidentally get such equipment, into the ditch and knock down the pole, and that the-person so traveling would then with a hammer attempt, to break the glass insulator for the purpose of disengaging the wire which suspended the pole upon the-grader? We do not think that the power company •should be held negligent for failing to foresee or to-reasonably anticipate such a result.
 

 There -can be no escape from the conclusion that, plaintiff’s decedent and Stroble were solely responsible for bringing about the situation in which they found themselves and that the plaintiff’s decedent directly brought about his own death when he got upon the grader with a hammer and in his attempt to break the glass insulator came in contact with the wire. .The-defendant had no warning, notice or knowledge of this situation, and the accident occurred without possibility of defendant doing anything to avoid or prevent injury to plaintiff’s decedent. We have reached the-conclusion that the result, as shown by this record, is-not one that would or should have been reasonably anticipated from the erection and maintenance of this-line.
 

 The plaintiff failed to prove any actionable negligence on the part of the defendant and the judgment of the Court of Appeals therefore is correct and should be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias and IIart, JJ., concur.
 

 Turner, J., not participating.