DOLATA, ADMR., APPELLEE, *v.* OHIO EDISON CO., APPELLANT.

(No. 1032—Decided August 12, 1981.)

*Mr. Thomas W. Sharratt* and *Mr. Rees Davis,* for appellee.

*Mr. Daniel A. Cook* and *Mr. C. Nevada Johnson, Jr.,* for appellant.

BELL, J. The Ohio Edison Company seeks to reverse the judgment rendered against it by a trial jury. Appellant argues that errors occurred during the course of the trial proceedings and that such errors were prejudicial in nature. Appellant's contentions are as follows:

"1. The maintenance of an electric line 30 feet above the ground running through a tree at said height, said height being substantially in excess of the minimum vertical clearance prescribed by the National Electric Safety Code, breaches no legal duty to a person climbing in said tree.

"2. In an action for wrongful death, expert opinion testimony as to pecuniary loss is limited to valuing the financial aid the beneficiaries would have received, based upon the facts which the evidence may warrant the jury in finding existed.

"3. Where the evidence shows only a nominal pecuniary loss to the beneficiaries, a verdict in excess of

$50,000.00 for the wrongful death of ten year old child is excessive, resulting from the influence of passion or prejudice."

## Facts

In August 1978, Wayne Allen Dolata resided with his parents, brothers and sisters in Medina County, Ohio. On the seventh day of that month, Wayne, along with other youngsters, was playing in and near a locust tree located on the Dolata property. In the course of this activity, Wayne, who, with his brother, had climbed the tree, somehow came into contact with a high voltage electric line and was killed. He was ten years old at the time.

An action for wrongful death was instituted at a later date by the administrator of the child's estate. Ohio Edison, the installer of the electric line in question, and the defendant in the administrator's action, denied liability. The cause proceeded to trial in the Court of Common Pleas of Medina County, and a verdict in the amount of $52,600 was rendered in favor of plaintiff. This verdict, reduced to final judgment, is the subject of the instant appeal. We discuss first defendant's assertions of error concerning the issue of liability, and next those concerning the issue of damages. Further facts are noted as they pertain to the issue under consideration.

### I

The administrator's (hereafter plaintiff's) claim was one sounding in negligence. In brief, plaintiff contended that Ohio Edison (hereafter defendant) was negligent in the design, installation and maintenance of certain of its electrical lines, and that this negligence was the proximate cause of Wayne's death. Defendant denied this contention and added the defense of Wayne's contributory negligence to its answer.

Our inquiry begins with the question of the existence of defendant's duty, if any, to plaintiff's decedent on August 7, 1978.

"* * * 'In every instance, before negligence can be predicated of a given act, back of the act must be sought and found a duty to the individual complaining, the observance of which would have averted or avoided the injury' * * *." Palsgraf v. Long Island RR. Co. (1928), 248 N.Y. 339, 162 N.E. 99, 99-100.

We are of the opinion, first, that defendant had a general and public duty which is best delineated by Judge Charles Bell of the Ohio Supreme Court in the following words from the syllabus of his opinion in Hetrick v. Marion-Reserve Power Co. (1943), 141 Ohio St. 347 [25 O.O. 467]:

"2. A power company erecting and maintaining equipment, including poles and wires, upon or along a public road, for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment and is responsible for any conduct falling short of that standard." (Emphasis added.)

Accord Thompson v. City of Slater (1917), 197 Mo. App. 247, 193 S.W. 971, 974; Mullen v. Wilkes-Barre Gas & Elec. Co. (1910), 229 Pa. 54, 77 A. 1108, 1109; Blackwell v. Alabama Power Co. (1963), 275 Ala. 123, 152 So. 2d 670; Lamb v. Consumers Power Co. (1938), 286 Mich. 228, 281 N.W. 632, 636; Alabama Power Co. v. Taylor (1975), 293 Ala. 484, 306 So. 2d 236; and Daltry v. Media Elec. Light, Heat & Power Co. (1904), 208 Pa. 403, 57 A. 833.

Included within the general duty of care to which reference has been made is a more specific obligation. The company must, in the construction, maintenance, and inspection of its line equipment, act to avoid causing injury to another if and when, such injury is one which might be reasonably anticipated.

The company is not required to foresee and/or anticipate each possible circumstance wherein injury might result to

another by reason of some injurious contact with the company's lines. See, for instance, *Pape* v. *Monongahela Power Co.* (1969), 18 Ohio App. 2d 91 [47 O.O.2d 122]. In *Lazar* v. *Cleveland Elec. Illum. Co.* (1975), 43 Ohio St. 2d 131 [72 O.O.2d 74], Stern J., in his dissent, at page 145, stated, in part:

"* * * [T]he power company is not an insurer and need not give warnings of the dangers of suspended, uninsulated high-tension wires. * * *"

We also quote here the last paragraph of the syllabus of *Hetrick:*

"3. Such company is not liable to one injured as the result of some unusual occurrence that cannot fairly be anticipated or foreseen and is not within the range of reasonable probability."

But if it can be said that it was foreseeable that a child might well climb a tree and foreseeable that in doing so the child would come into contact with high voltage lines, the process of determining defendant's liability can be said to have fairly begun.

Much opinion *dicta* has been devoted to this particular question:

"* * * The immemorial habit of small boys to climb little oak trees filled with abundant branches reaching almost to the ground is a habit which corporations stretching their wires over such trees must take notice of. * * *" *Temple* v. *McComb City Elec. Light & Power Co.* (1907), 89 Miss. 1, 42 So. 874, 875.

Accord, see, *inter alia: Klingensmith* v. *Traction Co.* (1924), 18 Ohio App. 290, 299; *Chickering* v. *Lincoln County Power Co.* (1919), 118 Me. 414, 108 A. 460; *Greene* v. *Lake Shore Elec. Ry. Co.* (1930), 10 Ohio Law Abs. 7; *Mullen* v. *Wilkes-Barre Gas & Elec. Co., supra; Thompson* v. *City of Slater, supra; Erickson* v. *Wisconsin Hydro Elec. Co.* (1934), 214 Wis. 614, 254 N.W. 106, 107; *Texas Gen. Util. Co.* v. *Nixon* (Tex. Civ. App., 1935), 81 S.W. 2d 250, 252.

The thrust of the foregoing opinions on this subject is capsulized in *Blackwell* v. *Alabama Power Co., supra,* in which the Alabama Supreme Court stated at page 676:

"* * *.

" 'So it must be regarded as settled that one who maintains a dangerous wire carrying electricity through or near a tree, must anticipate that persons may climb the tree, unless the circumstances are such that the remoteness of the tree, or perhaps some other reason, makes it improbable that a person will climb the tree.'

"* * *."

We agree with the opinions expressed both in courts of this state and others: that the propensity of youngsters to climb and play in trees is a propensity of which power companies must take cognizance and which renders possible injury to the child who comes into contact with power lines, a reasonably anticipated fact.

In light of the foregoing discussion, we believe it proper to state the following rules applicable to circumstances similar to those before us in this cause:

A power company which erects and maintains equipment, including poles and lines, for the purpose of transmitting and distributing electrical current along, upon and through both the public and private property of others is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, operation, maintenance and inspection of such equipment.

A company may not be held liable in damages to a person injured by contact with the company's equipment, when the injury results from some unusual occurrence which the company, in the use of ordinary care, could not fairly anticipate or foresee as being within the range of reasonable probability.

A company may be held to answer in damages to one injured as a result of the failure of the company to exercise due care in the construction, maintenance or inspection of its equipment if such injury

may be anticipated with a reasonable degree of probability.

The trial jury served as the determiner of fact in this cause. It found defendant company liable and susceptible to the payment of a damage award. It found in favor of plaintiff on the issue of contributory negligence, a finding which is not contested here by appellant. Were the facts in evidence such as would give basis to the jury's determination? We believe that they were.

The trial testimony indicates that defendant conducted an examination of the Dolata property before the installation of overhead electrical service lines was made. The installation eventually made in the location chosen by defendant involved the running of an uninsulated 7,200 volt wire in close proximity to a growing black locust tree. Further the testimony indicates that although the tree was side-trimmed prior to line installation in 1973, it was not trimmed after that time by defendant. A company policy relating to scheduled inspection and trimming of trees surrounding wire installation was suspended, so to speak, in 1974 and was not renewed until some years later. Thus, no inspection of the wire-tree relationship on the Dolata property was made between the time of line installation and the date of the accident in question here. Photographs of the tree itself show a tree easily climbable with large outreaching branches; also observable is the fact that the high voltage and the ground wires pass through the tree branches at a point below its topmost height. Appellant argues that its lines are strung at a height substantially in excess of that required by the National Electric Safety Code, and also contends that the company could not reasonably foresee that if even a child did climb the tree, he would reach such a height as to suffer injury. We agree that in regard to the height of the line at the time of installation Ohio Edison took proper precaution to avoid injury. But we are also of the opinion that the height of the line alone is not the only factor to be considered in determining negligence on the part of appellant. For example, the factor of insulation of lines and lack of defects is mentioned in *Wolf* v. *Ford* (1917), 7 Ohio App. 461, 464, 466, 467; the factor of inspection of lines is referred to in *Greene* v. *Lake Shore Elec. Ry. Co., supra.* A combination of factors governed the decision in *Alabama Power Co.* v. *Taylor, supra.* In certain causes, the matter of actual notice of a dangerous condition is discussed as being immaterial: *Alabama Power Co.* v. *Taylor, supra; Benton* v. *North Carolina Power Co.* (1914), 165 N.C. 354, 81 S.E. 448; *Sweeten* v. *Pacific Power & Light Co.* (1915), 88 Wash. 679, 153 P. 1054; *Blackwell* v. *Alabama Power Co., supra; Erickson* v. *Wisconsin Hydro Elec. Co., supra.*

We are of the opinion that the jury may consider all such elements probative of negligence allegedly attributable to defendant and in the event that the jury's findings were supported by some valid evidence, we will not substitute our judgment on review for that of the finders of fact during the trial proceedings. In the instant cause we hold that the evidence is such as to substantiate the jury's findings concerning defendant's liability. We reject assignment of error one.

## II

Defendant's final claims of error relate solely to issues of damage. As a point of beginning, we refer to Judge Victor's opinion in *Eakelbary* v. *Nipper* (May 21, 1980), Summit App. No. 9476, unreported. That opinion contains a comprehensive review of legal considerations pertinent to pecuniary loss questions in cases of wrongful death. The completeness of that discussion renders repetition unnecessary here.

Plaintiff's testimony relating to the damage issue consists of two segments. The first of these, the testimony of Wayne's father, William, made it clear that Wayne did, indeed, contribute ser-

vices of value to his parents, the prime beneficiaries of such services. Mr. Dolata estimated that Wayne's household and farm chores approximated a maximum of fourteen and one-half hours per week.

The second segment was the testimony of Dr. John Burke, plaintiff's economic expert. Portions of his advice to the jury concerning Wayne's life and work expectancy tie directly to the testimony of Wayne's father. The information given by Dr. Burke concerning Wayne's probable future income, however, was of no pertinency to the questions of pecuniary loss absent some showing by plaintiff that there existed a reasonable expectation that the present beneficiaries of Wayne's services would continue to benefit from such services after Wayne's emancipation. Thus, the record contains a lengthy and learned discourse on future earnings which tended to complicate needlessly the pecuniary loss issue.

There is no question, however, that the services rendered by the boy were of real value to his parents. It is in no way speculative to assume, based on the evidence, that such services would continue and be of more value in the future than they were in the past. Even so, we find no support in the record for the amount of the verdict eventually rendered by the trial jury. We are of the opinion that the verdict is excessive and subject to reversal on review.

Retrial of causes such as the one before us now are difficult for all of those whose lives have become involved in the legal determinations concerning liability and damage. For this reason, we have considered carefully the evidence elicited during the trial and make the observations which follow.

Considering the nature and complexity of the economic testimony presented, the verdict eventually reached was not, in our opinion, the result of passion or prejudice on the part of the trial jury. Nonetheless, a verdict such as that rendered here may be reversed on the single basis of the excessiveness of that verdict. *Larrisey* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207 [44 O.O. 238]; *Chester Park Co.* v. *Schulte* (1929), 120 Ohio St. 273. Accordingly, we order a remittitur in the amount of $20,000 and, if the same is accepted by the plaintiff, the judgment as modified will be affirmed. If this order of remittitur is not accepted, the judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

MAHONEY, P.J., concurs.