**FORTMAN et al., Appellants,**

v.

**DAYTON POWER & LIGHT COMPANY, Appellee.**

[Cite as *Fortman v. Dayton Power & Light Co.* (1992), 80 Ohio App.3d 525.]

Court of Appeals of Ohio,
Montgomery County.

No. 12997.

Decided June 5, 1992.

*Michael W. Krumholtz,* for appellants.

*John G. Lancione* and *John A. Lancione,* for appellee.

---

FAIN, Presiding Judge.

Plaintiffs, Walter V. Bergman, Executor, and Dolores Fortman, Administratrix (referred to collectively as "Bergman"), appeal from a summary judgment rendered in favor of defendant-appellee, Dayton Power & Light Company ("DP & L"), in these consolidated wrongful death actions. Kurt Bergman was electrocuted and Tim Fortman was severely injured when a metal scraper that Kurt Bergman intended to use to clean a smokestack touched uninsulated high-voltage electrical wires strung over the roof. The trial court held that ownership of the power lines was determinative of the duty owed, that DP & L did not own the lines, and, consequently, that DP & L did not owe a duty to the decedents. The trial court also found that there was no specific allegation by the plaintiffs that DP & L had violated any provision of the National Electric Safety Code ("NESC") and that evidence of such a violation would be

necessary to show negligence on the part of a power company. The trial court therefore granted DP & L's motion for summary judgment.

Bergman contends that the trial court erred in granting summary judgment and argues that a power company is required to exercise the highest decree of care in erecting and maintaining power lines, that DP & L failed in that duty, and that ownership of the lines at the time of the injury is not determinative of the duty owed.

We agree that ownership of the lines at the time of injury does not determine the existence or extent of DP & L's duty as the original erector and owner of the lines, and we conclude that there is a genuine issue of material fact whether DP & L's failure to erect the high-voltage lines with sufficient clearance over the roof, in conformity with NESC standards, proximately caused Bergman's death and Fortman's injuries and subsequent death.[1] Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.

## I

Both Kurt Bergman and Tim Fortman were seventeen years old and working after school and on Saturdays at FRI in Fort Recovery, Ohio. On April 16, 1986, they were working on the roof of FRI's building, preparing to clean a smokestack. Overhead, three uninsulated, high-voltage electrical lines were strung, thirteen to fourteen feet above the roof. DP & L had originally erected the bare, uninsulated electrical lines at this location in 1963 for the purpose of carrying 7,200 volts of electricity to the FRI plant. DP & L had apparently sold the wires, with other equipment, to the decedents' employer by 1972.

Kurt and Tim were assigned to clean the inside of a smokestack with a metal scraper. The stack had been cleaned only four times before, by a worker in his sixties. The handle on the scraper was five feet long, but the smokestack extended seven feet above the roof. The other worker had not been able to clean the bottom two feet of the stack with the scraper, but he had not attempted to remedy the situation. However, the boys decided to extend the pole so that the scraper would reach all the way to the bottom of the stack; they went to another coworker, who added a metal extension to the

---

1. Tim Fortman's death was remote in time, and only tangentially related to the injuries he sustained when Kurt Bergman was electrocuted. Therefore, we entertain doubt as to whether the wrongful death claim relating to Tim Fortman can survive a motion for summary judgment addressed to the proximate cause issue. However, both parties at oral argument agreed that that issue is not presently before us. Consequently, we leave that issue for another day.

pole. On the way back to the stack, the scraper's pole touched the wire, and Kurt, who was carrying the scraper, was electrocuted and died almost instantly. Tim attempted to assist him and incurred severe burns, which required the amputation of both his arms below the elbow.

Tim died about two years later when the car he was driving flipped over and he was thrown into a drainage ditch, where he drowned. He was unable to buckle his seat belt because his prosthetic arms were incapable of performing that task.

Bergman and Fortman alleged in their complaints that DP & L " * * * was negligent in constructing, energizing, failing to inspect, and maintaining its uninsulated 7200-volt power line at an unreasonably safe distance from the roof upon which Plaintiff's decedent was working. The Defendant further breached implied and expressed warranties and is strictly liable for the results of its inherently dangerous and defective product. Further, the Defendant was negligent in failing to notify the employer of Plaintiff's decedent of its uninsulated power lines and the obligation to maintain them in a reasonably safe condition."

DP & L moved for summary judgment on three grounds: (1) that the claims were barred by the statute of repose provided by R.C. 2305.131, (2) that DP & L had no duty to maintain or inspect the electrical lines that were involved in the accident and therefore owed no duty to the decedents, and (3) that the claims of strict liability were barred as a matter of law. Bergman conceded issue number three. The trial court found that because DP & L did not own the lines, DP & L had no duty to inspect and maintain the lines. Therefore, the trial court concluded that DP & L owed no duty to the decedents. The trial court did not reach the issue of the statute of repose.[2] Both personal representatives, Bergman and Fortman, appeal from the judgment rendered in favor of DP & L.

## II

Bergman's sole assignment of error is as follows:

---

2. As with the issue of the proximate cause of Tim Fortman's death, the parties agree that the statute of repose issue is not before this court on appeal. Because that issue was, at least, argued in support of the motion for summary judgment, even though the trial court granted summary judgment upon other grounds, we could consider that issue, and, if we were to agree with DP & L, affirm the summary judgment upon a different basis than the basis upon which it was rendered. However, because the parties have not argued the statute of repose in connection with this appeal, and because they all agree that it is not before us, we will also leave that issue for another day.

"The trial court erred in granting the defendant-appellee's motion for summary judgment"

Bergman states the issue presented for review is whether DP & L breached its duty to the decedents of exercising the highest degree of care in the construction, maintenance, and inspection of the 7,200–volt power lines that it erected over the roof of the FRI building. Bergman argues that DP & L owed a duty to the decedents to exercise the highest degree of care in the operation of its business of providing electricity to FRI and that DP & L breached that duty both in the construction of the lines and in not warning the employer of the dangers of the uninsulated lines that were too low above the roof.

DP & L concedes, for purposes of this appeal only, that it was negligent in the erection of the lines, but argues that any duty DP & L owed to the decedents was vitiated because DP & L has had no ownership, control, or maintenance responsibility over the lines since at least 1972.

■ DP & L is entitled to summary judgment only if it can establish, through evidentiary material permitted by Civ.R. 56, that there is no genuine issue as to any material fact, that it is entitled to judgment as a matter of law, and that it appears from the evidence before the trial court that reasonable minds could come to but one conclusion and that conclusion is adverse to Bergman and Fortman, the nonmoving parties, who are entitled to have the evidence construed most strongly in their favor. *Fryberger v. Lake Cable Recreation Assn.* (1988), 40 Ohio St.3d 349, 350, 533 N.E.2d 738, 740. The standard of review in this court is *de novo*, since the propriety of a summary judgment is a question of law.

■ To defeat a defendant's motion for summary judgment in negligence actions, the plaintiff must do three things: (1) identify a duty owed by the defendant to the plaintiff, (2) point to sufficient evidence from which reasonable minds can infer that that duty was breached, and (3) establish that the breach of duty was the proximate cause of the plaintiff's injuries. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 22–23, 3 OBR 20, 23–24, 443 N.E.2d 532, 535.

■ A power company owes a duty to exercise the highest degree of care, consistent with the practical operation of its business, in the construction, maintenance, or inspection of equipment that transmits and distributes electrical current. *Hetrick v. Marion–Reserve Power Co.* (1943), 141 Ohio St. 347, 355, 25 O.O. 467, 471, 48 N.E.2d 103, 107; *Dolata v. Ohio Edison Co.* (1981), 2 Ohio App.3d 293, 295, 2 OBR 324, 327, 441 N.E.2d 837, 839. A power company is responsible for any conduct that falls short of that standard. *Otte*

*v. Dayton Power & Light Co.* (1988), 37 Ohio St.3d 33, 38, 523 N.E.2d 835, 840. In *Hetrick,* the evidence showed that the power company was in conformity with the standards of the National Electric Safety Code and, therefore, it was not guilty of negligence. *Hetrick,* 141 Ohio St. at 358, 25 O.O. at 472, 48 N.E.2d at 108. The Supreme Court reiterated in *Otte* that the NESC controls the standards of a *public utility* in the installation, inspection, and maintenance of its equipment, including transmission and distribution lines, and the National Electric Code ("NEC") controls how the *customer* should maintain its own equipment. A public utility has a duty to inform its customers as to the NEC standards. *Id.,* 37 Ohio St.3d at 39, 523 N.E.2d at 841. Cases subsequent to *Hetrick* have held or noted in *dicta* that the utility may be negligent even though it complies with the NESC, where an injury might have been anticipated with a reasonable degree of probability. *Brauning v. Cincinnati Gas & Elec. Co.* (1989), 54 Ohio App.3d 38, 42, 560 N.E.2d 811, 815; *Dolata v. Ohio Edison Co.* (1981), 2 Ohio App.3d 293, 2 OBR 324, 441 N.E.2d 837; *Kohli v. Pub. Util. Comm.* (1985), 18 Ohio St.3d 12, 18 OBR 10, 479 N.E.2d 840.

DP & L argues that the "highest degree of care" standard of duty of an electrical utility company applies only when it *both* erects and maintains the equipment, relying on the syllabus of *Hetrick, supra.* DP & L has not provided any citations in support of that argument and has not suggested a reason why it should be so. We are not prepared to protect a utility with a lower standard of care when it erects or constructs equipment than the highest standard to which it is subject when it adds to its function the maintenance of that equipment.

 In some circumstances, the person maintaining or owning an electrical line may have altered the original construction in such a way as to render it unreasonable or unfair to hold the utility liable for subsequent injury. However, there is no evidence of any such alteration in the case before us. It is undisputed that the installation of the power line involved in the accident did not meet NESC standards. There is no evidence that FRI made any changes in the line or its location after its original erection. There is nothing to suggest that ownership or maintenance of the line affected the accident in this case in any respect. Ownership of the line is not determinative of the duty of the installer of the line and equipment owed to those who might reasonably be anticipated to be injured as a result of the installer's failure to exercise due care. See, *e.g., Ohio Power Co. v. Beck* (1935), 51 Ohio App. 156, 159–160, 4 O.O. 557, 558–559, 199 N.E. 860, 861 (power company had duty to see that electricity is safely conducted over the power lines without injury to the employees of the company, who had a legal right to be near the line).

DP & L argues that because a public utility has no duty to inspect or repair its customer's distribution system, *Otte, supra,* 37 Ohio St.3d at 38, 523 N.E.2d at 840, it owes no duty to its customer's employees; rather, it argues that any duty DP & L might owe is only with respect to its own equipment. DP & L argues that it is not responsible for "any imperfections in their customer's electrical distribution system which cause injuries to third persons." We are not persuaded.

It is undisputed that DP & L "install[ed], distribut[ed] and connect[ed] a 3 0 transformer" for FRI in 1963. It is disputed who owns the lines that carry the electrical current, but we do not find that ownership of the lines is determinative of a duty to act in a way to avoid injury that can be reasonably anticipated. One of Bergman's theories is that DP & L was negligent in its *erection* of the electrical lines. The evidence before the trial court showed that the height of the lines above the roof has not changed since their initial installation, and that the height at the time they were erected was insufficient according to the NESC. The hazard was caused by the fact that these bare, uninsulated lines, carrying a lethal voltage, were too close to the roof. The smokestacks were already in place when the wires were installed, and the outside stairs to the roof were in place. Where there are stairs to a roof, it is foreseeable that people will be on the roof; where there are smokestacks, it is foreseeable that people will clean the smokestacks. There is at least a factual question for the jury to determine whether DP & L's negligence in the initial erection of the lines proximately caused the electrocution of Kurt Bergman and the injury to Tim Fortman. Although the fact, even if true, that the lines were subsequently sold could give rise to independent intervening causes, there was no evidence presented in support of the motion for summary judgment to support a finding of an intervening independent cause.

DP & L contends that it did not have the power to do anything to correct the situation, because it did not own, control, or inspect the lines. It did, however, initially install the lines at an insufficient height, when it should have erected the lines in conformity with the NESC. It did control the switch box that turned the power to the lines on and off. The only evidence of any other entity inspecting or maintaining the lines or equipment was in 1973 when DP & L workers were on strike. In addition, it could have alerted the decedents' employer of the danger posed by the lines. If it had done so, the employer's failure to take any remedial action might be deemed to be an independent intervening cause sufficient to negate DP & L's liability for its negligence. However, the evidence showed that DP & L made no effort to inform FRI of the dangers involved or that the lines did not meet NESC standards.

DP & L had a duty to persons working on the roof of FRI's building; there is evidence from which one could infer that DP & L breached that duty and that DP & L's negligence was a proximate cause of Bergman's death and Fortman's injuries. Because there are genuine issues of material fact for a jury to determine, summary judgment was improperly rendered.

Bergman's sole assignment of error is sustained.

### III

Bergman's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON and GRADY, JJ., concur.