OPINION
Plaintiff-appellant, Isaac Heyne ("the appellant"), appeals from a decision of the Mercer County Court of Common Pleas granting summary judgment in favor of defendants-appellees, City of Celina ("the City") and the Mercer County Agricultural Society ("the Society"). For the following reasons, we affirm the decision of the trial court.
The pertinent factual and procedural history of the case is as follows: On July 8, 1998, the appellant was electrocuted and suffered physical injury while power washing the metal roof of Horse Barn No. 20 at the Mercer County Fair Grounds, which is owned and operated by the Society. At the time of the injury, the appellant worked as an employee of Do-Right Painting, a business owned by his father, Dan Heyne. Mr. Heyne had agreed with the Society to volunteer his company's services on a donated, independent contractor basis to clean and paint a rusted strip on the roof of the barn.
An electrical line owned by the City stretched across the roof of the barn approximately four to five feet above its peak. The line carried 7600 volts of electricity and was installed in 1971 to service a sewer lift station. The barn was constructed underneath the electrical line in approximately 1978-79.
On the morning the injury occurred, the appellant stood on the roof and began using a power washer, a metal wand with a trigger which emits pressurized water, to clean the portion of the roof that was to be painted. He began near the edge of the roof and worked backwards towards the peak. At some point halfway between the edge of the roof and the peak, electricity arced from the wire and shocked the appellant, rendering him unconscious.
On April 7, 2000, the appellant filed a complaint in the Mercer County Court of Common Pleas against the City, the owner of the electrical line, and the Society, the owner of the horse barn, alleging negligence and reckless disregard. Therein, the appellant claimed that the City installed or allowed the lines to exist without sufficient clearance and/or that the Society constructed the barn too close to the lines. The appellees filed a motion to dismiss. On April 2, 2001, the trial court issued a judgment entry granting summary judgment in favor of appellees. Specifically, the trial court found that the dangerous condition was open and obvious and that the appellant primarily assumed the risk of his injury.
The appellant now appeals asserting the following assignment of error.
 ASSIGNMENT OF ERROR The court erred in ruling, as a matter of law, that plaintiff primarily assumed the risk; that because the dangerous condition was open and obvious to plaintiff defendants owed no duty to plaintiff; and the court erred in granting summary judgment to defendants.
When reviewing a summary judgment motion, we must independently review the record to determine if summary judgment was appropriate.[1]
Therefore, we review the trial court's granting of summary judgment denovo.[2] Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made.[3]
We first address the assignment of error as it applies to the Society, the owner of the property. "Whether or not an owner of a premises is liable to a party who sustains injury on his property turns on the relationship of the parties or, the status of the party entering the premises, and whether the owner breached a duty of care arising from the parties' relationship."[4] A party entering the premises of another can be classified as either an invitee or a licensee.[5] An invitee is a party who is invited onto the premises for the benefit of the owner of the premises.[6] The duty an owner owes to an invitee is to exercise ordinary care and "to protect the invitee by maintaining the premises in a safe condition."[7] The owner, however, is under no duty to protect an invitee from dangers of which the invitee is aware or those which are open and obvious.[8]
On the other hand, a licensee enters the premises of another, by permission or acquiesence, for the benefit of the party's own interests.[9] The duty a property owner owes to a licensee is not that of ordinary care, but merely to refrain from wantonly or willfully causing injury.[10]
In the present case, Do-Right Painting accepted the job on a volunteer basis and the work to be done was for the benefit of the Society. Therefore, the appellant, as an employee of Do-Right Painting, was an invitee and the Society owed the appellant the highest duty of care. The Society was under a duty to maintain the premises in a safe condition. They were not under a duty to protect an invitee, such as Isaac, from dangers of which he was aware, or were open and obvious.
The record indicates that the appellant was fully aware of the risks associated with power washing a metal roof in close proximity to an electrical line. His father, Mr. Heyne, investigated the site two weeks before the job began and told Isaac that there was an electrical wire stretched across the roof. The appellant, who had received vocational training in the field of electrical safety, knew the dangers associated with live wires. He also knew that while power washing the roof, with the roof wet and mist in the air, that he need not even physically contact the wire to be potentially exposed to electrocution.
The above facts taken together convince us that the electrical line running across the peak of the horse barn was an open and obvious danger of which the appellant had knowledge. Accordingly, the appellant's assignment of error as it relates to the Society is overruled.
We now turn to the question of the City of Celina's liability. The appellant contends that the City should be treated as a public utility for purposes of determining its liability because it operates the City power system. The Supreme Court of Ohio has held: "A power company erecting and maintaining equipment, including poles and wires, upon or along a public road, for the purpose of transmitting and distributing electrical current, is bound to exercise the highest degree of care consistent with the practical operation of such business in the construction, maintenance and inspection of such equipment, and is responsible for any conduct falling short of that standard."[11] This heightened duty, which applies to public utilities, does not apply to political subdivisions.
The tort liability of political subdivisions is governed by R.C. 2744.02
and 2744.03. Even when a political subdivision is engaged in a proprietary function,[12] it is entitled to an initial presumption of immunity unless it has been demonstrated that its actions fall within one of the enumerated exceptions set forth in R.C. 2744.02(B). A city can be held responsible for injury or loss to a person caused by the negligent performance of acts by their employees with respect to proprietary functions.[13] This "ordinary care" standard of care lies below the heightened standard that the appellant would have us apply.
The question then becomes whether the appellant's injuries were caused by the "negligent performance" of the City's employees. If so, R.C.2744.02(B)(2) applies here. The City argues that it was not negligent because the electrical line was an "open and obvious" danger. As noted previously, Ohio case law has established that a property owner has a duty of ordinary care to business invitees, but owes no duty to warn invitees of open and obvious dangers on their property.[14] Similarly, the City, who owned the electrical line running across the barn roof, had no duty to warn the appellant of an open and obvious danger of which he was fully aware. Deposition testimony establishes that the appellant knew the conditions present at the time he was power washing the barn roof put him at risk of electrocution.
The appellant knew that an electrical wire stretched across the roof of the building.
 Q. So he [Isaac's father, Dan Heyne], in fact, told you that there was a wire?
A. Oh, yeah.
Q. Stretched across the peak of the roof?
A. Uh, huh. I mean it was obvious, you could see it.
The appellant also was aware that under the circumstances present at the time that he could be electrocuted.
Q. Do you know anything about the arcing of electricity?
 A. I know, I mean, if the conditions are right, it will arc.
Q. What are the conditions that need to be right?
 A. I'd say wet surfaces. I mean, if you're on a metal roof and it's wet and you got a live wire there, you're probably going to get it.
Q. Was the roof of this building damp?
A. Yes.
Q. On this day?
A. Yes.
 Q. You knew that under those circumstances that you just described that you need not even physically come into contact with the wire to be potentially exposed to electrocution?
A. Right.
Viewing the evidence in a light most favorable to the appellant, it remains clear that the electrical line was an open and obvious danger. We hold that the City did not owe a duty of care to the appellant as a matter of law.
The trial court properly entered summary judgment for the Mercer County Agricultural Society and the City of Celina. Accordingly, we overrule the appellant's assignment of error.
SHAW and BRYANT, JJ., concur.
[1] Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-412. See, also,Civ.R. 56(C).
[2] Farmers Comm. Co. v. Burks (1998), 130 Ohio App.3d 158, 163.
[3] State ex. rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589.
[4] Boyd v. Hicksville Aerie #2556, Fraternal Order of Eagles,Inc. (May 10, 1995), Defiance App. No. 4-95-2, unreported, citingLight v. Ohio University (1986), 28 Ohio St.3d 66; and Newton v.Pennsylvania Iron Coal, Inc. (1993), 85 Ohio App.3d 353.
[5] Id.
[6] Id.; Scheibel v. Lipton (1951), 156 Ohio St. 308.
[7] Id.
[8] Id.; Paschal v. Rite Aid Pharmacy, Inc. (1985),18 Ohio St.3d 203.
[9] Id.
[10] Id.
[11] Hetrick v. Marion-Reserve Power Co. (1943), 141 Ohio St. 347;Otte v. Dayton Power Light Co. (1988), 37 Ohio St.3d 33.
[12] R.C. 2744.01(G)(2)(c).
[13] R.C. 2744.02(B)(2).
[14] Hacker v. Cincinnati (1998), 130 Ohio App.3d 764, 769. See, also,Taylor v. Ohio Edison Co. (August 21, 1998), Lake App. No. 97-L-036,unreported.