James G. Carr Sr., U.S. District Judge *1021 This is a slip-and-fall case.
On Father's Day, 2013, plaintiff Connie Pelland was shopping at the Wal-Mart store on Glendale Avenue in Toledo, Ohio. As she was walking to the front of the store to use the restroom, Pelland slipped and fell on the wet surface next to a check-out register. She broke her hip and sustained other injuries.
Pelland sued Wal-Mart for negligence in the Common Pleas Court of Lucas County, Ohio. She alleged that the store failed to provide adequate warnings that the area where she fell was wet. Wal-Mart removed the case to this court on the basis of diversity jurisdiction. (Doc. 1 at ¶¶ 2-4); see also Pelland v. Wal-Mart Stores, Inc. , 2017 WL 1437506 (N.D. Ohio).
Pending are the parties' counter-motions for summary judgment. (Docs. 18, 20).
For the following reasons, I grant Wal-Mart's motion and deny Pelland's motion.
Background
A. The Accident
Pelland's accident happened shortly after 4:00 p.m. on June 16, 2013.
Around 3:54 p.m. that day, someone (it is unclear who) spilled a one-liter bottle of brown or orange soda near a check-out register. (Doc. 21-1 at 24; Doc. 25-1 at 17).
The check-out area where the spill occurred resembles a four-way intersection. (Doc. 21-2 at 4; Doc. 25-2 at 4; Doc. 27-2 at 1).
A customer entering the area would see a seven-foot-wide aisle running north-south from the front of the check-out area to its rear. (Doc. 21-2 at 4; Doc. 25-2 at 4). There are four registers in the area, two on each side of the north-south aisle. (Doc. 21-2 at 4). An approximately three-foot-wide east-west aisle bisects the middle of the north-south aisle, creating, effectively, four quadrants, with one register and part of the north-south aisle in each quadrant. (Doc. 25-2 at 4).
Register 10, where the spill occurred and next to which Pelland fell, is in the northeast quadrant of the intersection.[1] (Id. ).
Wal-Mart management paged a store employee to clean up the spill. April Hoffman, who responded to the page, testified that she cleaned up the spill by applying an absorbent directly to the spilled soda, mopping up the spill and the immediately adjacent area with a wet mop, and using a dry mop to absorb the remaining liquid. (Doc. 26-1 at 25-35). Hoffman mopped the area immediately next to register 10, as well as that part of the east-west aisle to the south and southwest of the register.
After Hoffman had done so, there was no liquid visible on the floor, though it remained somewhat damp and slick. (Doc. 21-1 at 40; Doc. 26-1 at 35).
Hoffman and/or another Wal-Mart employee also placed orange "caution cones" in the area of the spill. These cones are four-sided, with each side about twelve inches long. (Doc. 23-1 at 8; Doc. 27-1 at 15-16). The four sides come together at the top to form either a triangular or flat top. (Doc. 21-2 at 4; Doc. 25-1 at 32). Each cone says "Caution" and "Wet Floor" and depicts a person slipping and falling. (Doc. 21-2 at 4).
Wal-Mart employees may have initially placed as many as five cones around the spill area (Doc. 26-1 at 29), but it is undisputed that, when Pelland approached the area, only three cones remained.
*1022 Photos taken after the accident show that two of the cones were, more or less, exactly in the middle of the intersection of the north-south and east-west aisles. (Doc. 23-1 at 8; Doc. 27-2 at 1). To a customer standing in the east-west aisle and looking east, the cones may have appeared to be slightly south of the intersection's center point.
A third cone lay near the far northern end of the northwest quadrant, behind the bagging area of the register across the aisle from Register 10. (Doc. 21-2 at 4).
Pelland arrived at Wal-Mart around 4:00 p.m. (Doc. 21-1 at 22). It is undisputed that she did not see Hoffman or any other Wal-Mart employee mopping up the spill or placing the cones in the spill area, as those operations had ended before she arrived. (Id. at 24-25).
Needing to use the restroom, Pelland walked toward the front of the store and came to the four-way intersection. (Id. at 23). Standing at or passing by the south end of the north-south aisle, Pelland saw the two cones in the middle of the intersection of the north-south and east-west aisles. (Id. at 27) (Pelland testifying that she "had seen the cones"); (id. at 32) (Pelland testifying that "I came from this area and I did notice two cones."); (id. at 34) ("Q: And then, so you did see the cones at that point? A: Yes.")).
From the placement of the cones, Pelland concluded that the area immediately in front of her-that part of the check-out aisle to the south of the east-west aisle-was wet. She also concluded that the northern half of the check-out aisle would be dry. (Id. at 27-29, 32-33). Accordingly, rather than walk down the aisle toward the cones, Pelland walked west, to the next check-out aisle, made a right turn, and walked down that aisle. She then made a right turn and found herself back in the east-west aisle bisecting the north-south aisle. (Id. at 34).
Still images from an overhead security camera show that the two orange cones were now either directly in front of Pelland or ahead of her and slightly to her right. (Doc. 23-1 at 1, 4-7). Nevertheless, Pelland testified, she did not see the cones as she approached from the west. (Doc. 21-1 at 29-31).
Pelland then walked toward the cones in the middle of the intersection-coming within, as may be seen on the security-camera stills, several inches of one of the cones-turned left, and started walking north down the aisle where the spill and ensuing clean up had occurred. "[I]mmediately" after she passed by the cones, however, Pelland slipped, fell, and broke her hip. (Id. at 34).
B. State Court Litigation
Pelland originally brought this suit in state court.
Of note, the Common Pleas Judge presiding over the case denied Wal-Mart's motions for summary judgment as to liability and for reconsideration. (Doc. 24-1, Doc. 24-2). The Judge set the case for trial in March, 2016, but, due to a scheduling conflict that prevented defense counsel from taking a needed deposition before trial, the parties agreed to dismiss the case without prejudice under Ohio R. Civ. P. 41(A)(1), thereby, inter alia , effectively erasing the state court's ruling that a jury question existed with regard to Pelland's negligence claim.
When Pelland refiled the suit, Wal-Mart removed it to this court.
Standard of Review
Summary judgment is appropriate under Fed. R. Civ. P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
*1023 The movant must initially show the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. 2548. Once the movant meets that burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc ., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56"requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. Celotex , supra , 477 U.S. at 324, 106 S.Ct. 2548.
I accept the non-movant's evidence as true and construe all evidence in its favor. Eastman Kodak Co. v. Image Tech. Servs., Inc ., 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).
Discussion
Pelland claims that Wal-Mart " 'negligently failed to keep the floor of its store in a safe condition which caused [her] to fall and sustain serious injuries.' " Holly v. Walmart Real Estate Business Trust , 262 F.Supp.3d 532, 2017 WL 3479577, *2 (N.D. Ohio 2017) (quoting Flowers v. Penn Traffic Co. , 2001 WL 921427, *1 (Ohio App.) ).
Wal-Mart contends Pelland was aware of the spill area and chose to ignore the risk of injury by heading into that aisleway instead of taking a safer path.
A. Ohio Law on Failure-to-Warn Claims
As I recently explained in Holly , supra , to prevail on this sort of negligence claim, Pelland must show:
1) defendant owed plaintiff a duty of care; 2) defendant breached that duty; and 3) the breach proximately caused plaintiff's injuries.
In Ohio, plaintiff's status on defendant's premises determines the scope of the legal duty owed. Shump v. First Cont'l-Robinwood Assocs. , 71 Ohio St. 3d 414, 417, 644 N.E.2d 291 (1994).
Holly , supra , 262 F.Supp.3d at 534-36, 2017 WL 3479577 at *2-3.
Moreover, here, as in Holly :
Neither party disputes that plaintiff was a business invitee. As such, defendant owed plaintiff a duty to exercise ordinary or reasonable care in maintaining its premises in a reasonably safe condition "so that its customers are not unnecessarily and unreasonably exposed to danger." Paschal v. Rite Aid Pharmacy, Inc. , 18 Ohio St. 3d 203, 203, 480 N.E.2d 474 (1985) ; see also Armstrong v. Best Buy Co., Inc. , 99 Ohio St. 3d 79, 80, 788 N.E.2d 1088 (2003) ("A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers.").
Defendant's responsibilities, however, do not extend so far that it serves as "an insurer of the customer's safety." Paschal , supra , 18 Ohio St. 3d at 203, 480 N.E.2d 474.
* * *
Under Ohio law, for a business invitee to recover for an injury caused by a hazard on defendant's premises, the plaintiff must show:
1. That the defendant through its officers or employees was responsible for the hazard complained of; or
2. That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
3. That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.
Id. at 536, 2017 WL 3479577 at *3 (quoting Johnson v. Wagner Provision Co. , 141 Ohio St. 584, 589, 49 N.E.2d 925 (1943) ).
*1024 B. The Warnings Were Adequate
Pelland's theory of liability is the second one that Johnson , supra , outlines. She maintains that Wal-Mart failed to give adequate notice that a spill had occurred near register 10, and that this failure proximately caused her injuries. But the undisputed evidence establishes that no such breach of Wal-Mart's duty of care occurred.
First, within moments of the soda spill, Wal-Mart staff had mopped it up and placed several warning cones in the still damp area. While there is a question as to how many cones staff initially placed in the area, it is undisputed that there were two orange cones sitting in, or inches to the south of, the exact middle of the intersection of the north-south and east-west aisles. (Doc. 21-2 at 4).
Second, Pelland repeatedly testified that she saw these cones as she approached the check-out area. (Doc. 21-1 at 27, 32, 34). Indeed, Pelland appreciated that the cones signified a potential danger: she changed her planned route to the bathroom, avoiding the southern half of the check-out aisle and walking to the next north-south aisle to the west. (Id. at 34).
Third, the undisputed evidence-Pelland's testimony and, in particular, photographs from the overhead security camera-shows that Pelland, after walking to the next check-out aisle and turning right, walked into the east-west aisle bisecting the check-out aisle she had just decided to avoid.
At that point, the two orange cones were no more than a few feet in front of Pelland. (Doc. 23-1 at 1, 4-7). Nevertheless, Pelland, having concluded only moments before that this area was hazardous, walked straight toward the caution cones.
To be sure, Pelland testified that she did not see the cones while walking in the east-west aisle. But it is undisputed that she had seen these same cones only seconds before. For whatever reason, Pelland then walked directly into the area that had two cones clearly stating the unambiguous warnings of "Wet Floor" and depicting a person slipping and falling. All that being so, a reasonable person could only have concluded that entering the area was dangerous.
Fourth, Pelland testified that she slipped and fell "immediately" after she walked by these cones. (Doc. 21-1 at 34).
Faced with this undisputed evidence, a reasonable jury could conclude only that Wal-Mart fulfilled its obligation to warn Pelland that the area near register 10 was wet and hazardous.
C. Pelland's Arguments Lack Merit
Pelland raises essentially three arguments why she is entitled to summary judgment on the liability question.
1. Alleged Lack of Warning Cones
Pelland first contends that "no warning cones were in the horizontal East West aisle through which Plaintiff walked." (Doc. 18 at 3). For that reason, Pelland argues, she had no notice that the area she was approaching was hazardous.
To support this contention, however, Pelland heavily relies on-indeed, her brief reprints-a photograph of the east-west aisle that was taken after the accident. (Id. at 2-3); (Doc. 27-1 at 15) (defense counsel objecting to this photo on grounds that "there's no cones in Exhibit 3. And it was taken on a different day."). In contrast, the photos depicting the scene on the day of the accident show the two orange cones in the middle of the intersection of the north-south and east-west aisles. (Doc. 21-2 at 4).[2]
*1025 Pelland also points to April Hoffman's testimony that there were no cones in the east-west aisle. (Doc. 26-1 at 68, 79-80).
Context makes clear, however, that Hoffman did not testify there were no orange cones in the intersection of the north-south and east-west aisles. She made the more limited point that the placement of the orange cones did not block Pelland from entering the east-west aisle on the west side of the north-south check-out aisle. (Id. at 68, 73, 78-79). And that evidence does not create a factual dispute as to the adequacy of the warnings, given Pelland's testimony that she had seen the cones just seconds earlier, recognized their import, and nevertheless walked into the area where the cones lay.
That Pelland did not see, for a second time, what was there to be seen does not permit a jury to find that Wal-Mart breached its duty of care.[3]
2. Failure to Take Additional Preventative Measures
Second, Pelland maintains that Wal-Mart employees testified that the two cones in the middle of the intersection were inadequate to warn her that the area was wet.
Hoffman and Julie Chatos, a cashier who was present when Pelland fell, testified that, in their opinions, Wal-Mart should have placed more caution cones around, or placed them in different spots in relation to, the spill area. Had it done so, Hoffman and Chatos opined, Pelland most likely would not have injured herself. (Doc. 25-1 at 45-50; Doc. 26-1 at 85-86).
Even assuming, over Wal-Mart's objection (Doc. 20 at 6-7), that, as unlikely as it may be, this lay opinion testimony is admissible under Fed. R. Evid. 701, it does not create a genuine factual dispute as to the adequacy of the warnings Wal-Mart did give.
For one thing, neither Chatos nor Hoffman testified that the actions Wal-Mart took after the spill were inadequate. (Doc. 25-1 at 49) (Chatos testifying that "I'm not gonna say that it wasn't enough, we, but there should have been more.").
For another, Ohio law is clear that this sort of evidence-testimony that "the area could have been made 'safer' "-is not "evidence that the area as constituted is unreasonably dangerous." Demos v. Toys "R" Us, Inc. , 2000 WL 877825, *4 (Ohio App.).
As the Ohio Supreme Court explained nearly seventy-five years ago, in Hetrick v. Marion Res. Power Co. , 141 Ohio St. 347, 358, 48 N.E.2d 103 (1943), "Foresight, not retrospect, is the standard of negligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence."
Accordingly, even taking Chatos's and Hoffman's testimony at face value, it remains undisputed that: 1) there were two orange cones in the area of the spill when Pelland approached the check-out aisle: 2) Pelland saw the cones and understood that they signified a hazardous area; 3) Pelland acted on that recognition and avoided walking down the southern half of the check-out aisle; and nevertheless 4)
*1026 walked back into the area of the hazard, immediately after which she slipped and fell.
As such, it is undisputed that, whatever additional steps Wal-Mart could have taken, the "area as constituted [was not] unreasonably dangerous." Demos , supra , 2000 WL 877825 at *4.
3. Alleged Violations of Wal-Mart Policy
Finally, Pelland argues that Wal-Mart employees' alleged violation of the company's policies governing spill clean ups demonstrates that the company failed to provide adequate warnings.
Wal-Mart, via its "Standard Operating Procedure," directs employees to take several steps to clean up a spill. (Doc. 27-2 at 5-7).
Initially, an employee must "[h]ave another associate guard the spill." (Id. at 5). Then the employee must gather the supplies needed for a proper clean up. (Id. ). Next, the employee must "[p]lace safety cone [sic ] next to the spill to prevent any customer/Member traffic from walking/moving through the spilled material." (Id. ). Thereafter the employee should use a squeegee "to reduce the size of the spill." (Id. at 6). The employee should then pour an absorbent around the liquid edges of the spill. (Id. ). Finally, after the absorbent has had time to work, the employee uses the squeegee to mop up the residue of the spill. (Id. ).
Here, Pelland emphasizes that no one was guarding the check-out area when she approached it, and that no one placed a caution cone directly on the spill itself. (Doc. 18 at 7-10). Neither contention creates a material factual dispute.
Under the clean up policy, a Wal-Mart employee must guard the spill before the clean up process begins, when there are no cones in the area to warn customers of the danger. Here, however, Hoffman and/or another employee had already placed the cones near the spill, thereby obviating the need for an employee to remain in the area and warn customers.
Furthermore, Wal-Mart's written clean up policy does not require that an employee place a warning cone on the spill itself; it requires that warning cones be placed "next to the spill ." (Doc. 27-2 at 5) (emphasis supplied). That is exactly what happened here.
Pelland argues that the cones were ten feet away from the spill, but she does not cite any evidence to support that contention. Indeed, another Wal-Mart employee estimated that the cones were, at most, five feet away from the spill. (Doc. 27-1 at 31-32). Pelland herself testified, moreover, that she fell "immediately" after she passed the cones. (Doc. 21-1 at 34).
Finally, even assuming that a violation of internal Wal-Mart policy occurred, such a violation does not, as a matter of Ohio law, establish negligence. Martin v. Giant Eagle, Inc. , 2014-Ohio-2657, ¶ 31 (Ohio App.) ("A violation of an internal policy does not establish the standard of care."); Ray v. Wal-Mart Stores, Inc. , 2013-Ohio-2684, ¶ 37, 993 N.E.2d 808 (Ohio App.) ("a reasonable inference of negligence does not arise simply because an employee failed to comply with a policy directive").
It is undisputed that Wal-Mart placed two warning cones within a short distance of the spill, and that Pelland saw these cones and understood what they signified. Nevertheless, she returned to the hazardous area and immediately slipped and fell.
Accordingly, any violation of Wal-Mart's internal clean up policies, assuming such occurred, would not support a jury finding that Wal-Mart breached its duty to Pelland. Cf. Holly , supra , 262 F.Supp.3d at 538, 2017 WL 3479577 at *5 (finding that, in a slip-and-fall case where store employee *1027 did not guard spill, clean it thoroughly, or place caution cones around the spill, employee's non-compliance with internal policies on spill clean ups "show[ed] that defendant and its employees. . well knew what needs to be done in circumstances such as those that existed here, and a jury may appropriately consider [employee's] non-compliance with those policies as evidence of breach").
Conclusion
It is, therefore,
ORDERED THAT:
1. Wal-Mart's motion for summary judgment (Doc. 20) be, and the same hereby is, granted; and
2. Pelland's motion for partial summary judgment (Doc. 18) be, and the same hereby is, denied.
So ordered.

I provide this description solely for the reader's benefit, and not to establish or imply that this is what Pelland saw or should have seen as she approached the area.

While the photo accurately depicts what it shows, and thus may pass muster under Fed. R. Evid. 901(a), it does not show that scene on the day of the accident. This renders the photo, at best, of dubiouis relevance under Rules 401 and 402, and perhaps even more confusing to the jury than probative under Rule 403.

In Ohio, it has long been accepted that, as a matter of law, an injured person is herself negligent and responsible for her injuries where she "could have seen the danger, and avoided the injury, by looking.[.]" Cleveland, C. C. &I. Ry. Co. v. Schneider , 45 Ohio St. 678, 696, 17 N.E. 321 (Ohio 1888).